COMMONWEALTH *vs.* JOSEPH H. GROSS.

No. 05-P-326.

Suffolk. May 16, 2005. - October 25, 2005.

Present: ARMSTRONG, C.J., PERRETTA, GREENBERG, BECK, & BERRY, JJ.

Further appellate review granted, 445 Mass. 1108 (2005).

*Sex Offender. Practice, Civil,* Sex offender. *Statute,* Construction.

A Superior Court judge erred in dismissing a petition by the Commonwealth under G. L. c. 123A to commit the defendant as a sexually dangerous person on the ground that the Commonwealth had failed to comply with the deadline set forth in G. L. c. 123A, § 14(*a*), for filing its motion for trial, where the failure to so file did not result in a fundamental infringement of the defendant's liberty interests, and where the defendant was on notice that the Commonwealth intended to proceed to trial due to its request for such relief in its original petition. [834-837] GREENBERG, J., dissenting, with whom BECK, J., joined.

PETITION filed in the Superior Court Department on July 16, 2002.

Following the defendant's commitment pursuant to G. L. c. 123A, § 13(*a*), and additional pretrial proceedings, a motion for summary judgment was heard by *E. Susan Garsh,* J.

*Alison R. Bancroft,* Assistant District Attorney, for the Commonwealth.

*Robert E. Fox* for the defendant.

BERRY, J. This is an appeal from a summary judgment dismissing a petition filed under G. L. c. 123A to have the defendant tried to determine whether he was a sexually dangerous person under the statute. The summary judgment was based on the Commonwealth's failure to comply with the trial motion filing timeline set forth in G. L. c. 123A, § 14(*a*),[1] which requires that the Commonwealth's motion for trial shall be filed within

---

[1]General Laws c. 123A, § 14(*a*), inserted by St. 1999, c. 74, § 8, provides that:

fourteen days of the qualified examiners' filing of their reports with the court. However, because the failure to so file did not result in a longer detention of the defendant, infringing his fundamental liberty interests, and because the original petition requested a trial, putting the defendant on notice, a majority of this court (by a closely divided count of the justices[2]) is of the opinion that dismissal of the petition by summary judgment was error.

The majority view is that this case is controlled by *Commonwealth* v. *Gagnon*, 439 Mass. 826, 830-832 (2003) (holding that procedural error by the Commonwealth in connection with certain timelines under G. L. c. 123A, which did not infringe liberty interests of a defendant, did not warrant dismissal of the petition), and *Commonwealth* v. *Kennedy*, 435 Mass. 527, 530 n.3 (2001) (reserving whether "lesser violations of the deadlines in G. L. c. 123A may result in some lesser sanction" than dismissal of the petition). Applying the rationales of *Gagnon* and *Kennedy*, in this case it is the opinion of this court that there was a lesser violation of the G. L. c. 123A time standards,

---

"The district attorney or the attorney general at the request of the district attorney may petition the court for a trial which shall be by jury unless affirmatively waived by the person named in the petition. *Such petition shall be made within 14 days of the filing of the report of the two qualified examiners. If such petition is timely filed within the allowed time, the court shall notify the person named in the petition and his attorney, the district attorney and the attorney general that a trial by jury will be held within 60 days to determine whether such person is a sexually dangerous person.* The trial may be continued upon motion of either party for good cause shown or by the court on its own motion if the interests of justice so require, unless the person named in the petition will be substantially prejudiced thereby. The person named in the petition shall be confined to a secure facility for the duration of the trial." (Emphasis supplied.)

[2]The case was initially heard by a panel comprised of Justices Greenberg, Beck, and Berry. The decision of this panel, with a dissenting opinion, was thereafter circulated to the Justices of the Appeals Court. Following the recording of the votes of the Justices, the case was submitted on the record and briefs for further review by Chief Justice Armstrong and Justice Perretta, who then participated in the ultimate resolution and decision of this case, in accordance with the provisions of Mass.R.A.P. 24(a), 365 Mass. 872 (1974). The procedure follows that delineated in *Sciaba Constr. Corp.* v. *Boston*, 35 Mass. App. Ct. 181, 181 n.2 (1993), and the long-standing practice of the Appeals Court, designed to ensure that published opinions reflect the view of a majority of the Justices. See *Commonwealth* v. *Rousseau*, 61 Mass. App. Ct. 144, 144 n.1 (2004).

which did not result in a fundamental abridgement of the defendant's liberty. Therefore, the drastic sanction of dismissal by summary judgment was error of law. Instead, a lesser sanction was warranted, upon a showing of prejudice to the defendant arising out of the Commonwealth's failure timely to file the trial motion. Accordingly, we reverse the summary judgment, which had barred trial proceedings to determine whether the defendant is a sexually dangerous person under G. L. c. 123A.

That there was not a longer detention infringing the defendant's fundamental liberty interest flows from analysis of a chronology of the operative dates of the proceedings in the Superior Court, see analysis *infra*. That analysis establishes that, even had the Commonwealth's § 14(*a*) trial motion been timely filed, the additional sixty days allowed under § 14(*a*) for commencement of trial (after the trial motion filing) was, in effect, a time buffer, such that the defendant would have been subject to detention in any event during the intervening period. See text of § 14(*a*) in note 1.

The controlling dates and timeline calculations under G. L. c. 123A are as follows. The two qualified examiner reports were timely filed on October 4, 2002. This means that the Commonwealth's trial motion should have been filed on or before October 18, 2002. There is no question that this separate trial motion, required by § 14(*a*), was not timely filed by the Commonwealth. See note 8, *infra*. But, even had the trial motion been timely filed, the buffer to commencement of trial built into § 14(*a*) would have extended for sixty days, from October 18, 2002, to December 17, 2002. In this intervening period, the defendant still would have been subject to detention awaiting trial. Simply put, these material dates all compute to mean that, at the juncture of the defendant's initial motion to dismiss filed on November 13, 2002, and originally denied by a Superior Court judge (different from the judge who ultimately entered summary judgment dismissing the petition) on November 15, 2002, the defendant's liberty interest had not been infringed.[3]

Nothing in the defendant's second dismissal motion, styled as

---

[3]This case presents the issue not reached in *Commonwealth* v. *Knapp*, 441 Mass. 157, 158 n.3 (2004). In *Knapp*, the Supreme Judicial Court, *ibid.*, noted:

a motion for summary judgment — which was not filed until February 11, 2005, more than two years after his original dismissal motion — in our opinion, changes the correctness of the original November 15, 2002, Superior Court judge's ruling denying dismissal of the c. 123A petition. Moreover, this so-called summary judgment motion — more accurately deemed a motion for reconsideration[4] — did not set forth any new facts or developments in the law relative to the G. L. c. 123A time standards which would have justified a judgment of dismissal in March, 2005, that had not been warranted in November, 2002. Especially is this so, when the March, 2005, dismissal judgment was based exclusively on the trial motion timeline detailed in § 14(a), already resolved in November, 2002.

Notwithstanding the lack of any change in fact or law as of March 2, 2005, the defendant's motion for reconsideration was allowed by a Superior Court judge (as previously noted, different from the judge who had denied dismissal of the c. 123A petition on November 15, 2002), who entered summary judgment, dismissing the c. 123A petition with a concurrent order that the defendant be immediately released from the Mas-

"Instead of petitioning for a trial within fourteen days of the filing of the qualified examiners' report, as G. L. c. 123A, § 14(a), envisions, the Commonwealth included its petition for a trial within its initial petition alleging that Knapp is a sexually dangerous person. Knapp moved to dismiss the Commonwealth's petition for commitment on this basis. After a hearing, the Superior Court judge denied the motion, holding that the Commonwealth's combined filing fulfilled "the spirit and letter of the statute." Knapp argues here that the Commonwealth's combined filing makes its petition invalid and therefore would render his own commitment illegal. *The question whether the Commonwealth may file its § 14(a) petition concurrently with its § 12(b) petition was not reserved and reported by the single justice; therefore, we do not address it*" (emphasis supplied).

Although the issue of a procedural error in moving for trial under § 14(a) was reserved in *Knapp*, the analysis in that opinion cites as a salient factor on the issue there presented, i.e., the constitutionality of the defendant's confinement through trial, that there had been a determination of probable cause that the defendant was sexually dangerous under c. 123A. *Id.* at 166-167. That is similarly so in this case.

[4]"Summary judgment is a creature of the Massachusetts Rules of Civil Procedure, which are inapplicable to proceedings under G. L. c. 123A." *Commonwealth* v. *Dube*, 59 Mass. App. Ct. 476, 480 n.9 (2003). Accordingly, the defendant's motion was essentially a motion to reconsider the defendant's earlier motion to dismiss.

sachusetts Treatment Center. Following the Commonwealth's appeal, the defendant's release was stayed by a single justice of this court, and the appeal was expedited.

We note that after the original November 15, 2002, denial of the defendant's dismissal motion, both the Commonwealth and the defendant segued to pretrial proceedings and trial preparation activities common under G. L. c. 123A for an imminent trial. Furthermore, from all that appears of record, the approximately two-year delay to the final scheduled trial date was, in large measure (though unduly prolonged), attributable to the multitude of pretrial proceedings undertaken by both the defendant and the Commonwealth, continuing discovery, additional psychiatric evaluations and reports,[5,6] and extensive motion practice and requested continuances of the trial date[7] — all

[5]On April 21, 1994, the defendant pleaded guilty to rape of a child under sixteen years of age, and assault with intent to rape the eleven year old daughter of his long-time girlfriend. Two other charges, i.e., charges of assault and battery and indecent assault and battery on a child under fourteen years of age were filed. On the rape conviction, the defendant was sentenced to six to ten years; on the assault with intent to rape conviction, he was sentenced to a consecutive sentence of five to seven years.

[6]Over the course of the case, the qualified examiners, Drs. Carol Feldman and Barbara Quiñones, submitted a total of five reports. Both psychiatric experts concluded that the defendant is sexually dangerous and likely to reoffend if not confined to a treatment facility. Dr. Feldman opined that the defendant suffers from antisocial personality disorder with symptoms of pedophilia. Dr. Quiñones opined that the defendant suffers from pedophilia and paranoid schizophrenia. This latter examiner comments that the defendant's "history of sexually offending a ten year old girl over an extended period of time and the presence of a mental disorder that when active results in impulsivity, impaired judgment, and aggressive and threatening behavior for [the defendant] in conjunction with untreated sexual arousal toward children, a lack of treatment participation, and a history of medication noncompliance even within the constraints of hospitalization and incarceration are factors" that predispose the defendant to the commission of sexual acts to a degree that makes him a menace to society.

In February of 2005, shortly before filing the motion for summary judgment, the defendant filed with the court reports from Drs. Daniel Kriegman and Joseph J. Plaud, which set forth their expert opinions that the defendant did not meet the statutory definition of a sexually dangerous person.

[7]Commencement of trial under G. L. c. 123A, § 14(*a*), may be continued in circumstances where a judge makes findings on the record that there is good cause to continue the beginning of trial, or that it is otherwise in the interest of justice to do so. See generally *Commonwealth* v. *DeBella*, 442 Mass. 683, 687-691 (2004).

as further detailed in the procedural history of this case, *infra.*

*Analysis.* As summarized *supra*, the operative points of reference are the October 4, 2002, date of the filing of the qualified examiner reports which, in turn, prompted the § 14(*a*) trial motion filing requirement; the October 18, 2002, deadline (not met) for the Commonwealth's trial motion filing; the November 13, 2002, filing of the defendant's original dismissal motion; the November 15, 2002, denial of that motion by the Superior Court judge; and the § 14(*a*) sixty-day trial commencement period, which would have extended the defendant's detention for a period up to December 17, 2002, at which point, trial would have commenced, if it were not continued on various grounds.

At each of these operative points, there was no infringement of the defendant's liberty interest because, although the trial motion was not timely filed on October 18, 2002,[8] the Commonwealth's failure to meet the fourteen-day § 14(*a*) time standard did not result in unlawful detention because the defendant nevertheless was awaiting trial under the sixty-day intervening period also provided for in § 14(*a*). Thus, as in the *Gagnon* case, "the Commonwealth's failure to meet the report filing deadline [here, the § 14(a) trial motion filing deadline] did not affect the defendant's liberty interest, and because the Commonwealth met all other deadlines, we vacate the order of dismissal." *Commonwealth* v. *Gagnon*, 439 Mass. at 827. As in *Gagnon*, so too in this case, a lesser sanction rather than dismissal may have been appropriate, depending upon any resulting prejudice to the defendant. Here, however, the motion for reconsideration that led to the dismissal did not demonstrate any such prejudice.

The *Kennedy* case leads to the same result. In *Kennedy*, 435 Mass. at 531, the court affirmed dismissal of a G. L. c. 123A

---

[8]The dissent notes that the Commonwealth never filed a motion for trial. That may be accounted for by the fact that the first Superior Court judge denied the dismissal motion, and the case proceeded on a trial course. Even though untimely, i.e., even though the October 18 § 14(*a*) deadline had passed and dismissal was denied on November 15, the better practice would have been for the Commonwealth to file such a motion for the record. Given the correctness of the November 15 denial of dismissal of the petition, the Commonwealth's failure to cure the filing defect does not change our analysis.

petition. But this was so because, in that case "[t]he Commonwealth['s] fail[ure] to provide the defendant with the protections mandated by the statute . . . result[ed] in a period of detention for examination vastly in excess of the maximum allowed by the statute." *Id.* at 530. In the instant case, there was no such liberty deprivation as in *Kennedy.*[9] Of import, although dismissal was deemed compelled in *Kennedy*, the Supreme Judicial Court framed the issue of an exception (consistent with *Gagnon* and applicable here), in circumstances when the Commonwealth's violation of a prescribed G. L. c. 123A timeline does not cause abridgement of the defendant's liberty. See *id.* at 530 n.3. "The facts in this case support the judge's decision to dismiss, and the Commonwealth concedes that any alternative remedies to dismissal it might suggest in this case are now moot. *We thus need not consider whether lesser violations of the deadlines in G. L. c. 123A may result in some lesser sanction*" (emphasis supplied). *Ibid.*

In this appeal, several factors combine to place the case within the *Gagnon* framework and the *Kennedy* exception for a lesser sanction than dismissal of the G. L. c. 123A petition, including that (a) the defendant was on notice that the Commonwealth intended to proceed to trial because the Commonwealth had requested such relief in its original petition; (b) based on the qualified examiner reports filed on October 4, 2002, there was virtually no question but that the Commonwealth possessed psychiatric opinions clearly and unequivocally concluding that the defendant was sexually dangerous within the meaning of the G. L. c. 123A criteria, and that these diagnostic opinions served to provide additional notice to the defendant — consistent with the Commonwealth's prior notice — that the Commonwealth would take the case to trial to have the defendant determined sexually dangerous; (c) following the Superior Court judge's November 15, 2002, denial of the defendant's motion to dismiss, the Commonwealth and the defendant acted as if the case were ongoing and appeared at a series of court dates, *all designed to*

---

[9]To reiterate, the long period before the case was set for trial had nothing to do, as far as can be seen from the record, with the § 14(*a*) violation, but rather was attributable to the course of the pretrial proceedings.

*move the petition forward to trial*; (d) a trial always loomed on the horizon — this, notwithstanding that the pretrial proceedings and motion practice were prolonged — so that there was no alteration in course from the Commonwealth's original trial notice set forth in the petition; (e) the case was ultimately set for trial on February 28, 2005; and (f) no new facts or law supported the March, 2005, summary judgment dismissal, arising out of the very same violation of the G. L. c. 123A, § 14(*a*), trial motion filing deadline for which dismissal had been denied in November, 2002.

*Procedural history.* Because the procedural history is important to the question of whether a sanction lesser than dismissal under *Gagnon* and *Kennedy* is warranted, we set forth the dates of procedural steps and describe below a series of material court events[10] in the procedural history relating to the case's movement to trial.[11]

That procedural history is as follows. On July 16, 2002, the Commonwealth filed a petition under G. L. c. 123A for the defendant's commitment as a sexually dangerous person and for temporary detention pending hearing. A probable cause hearing was held on August 14, 2002, and the trial judge subsequently found probable cause. Therefore, on August 20, 2002, the defendant was committed to the Massachusetts Treatment Center as provided in G. L. c. 123A, § 13(*a*), for a period not to exceed sixty days to allow for psychiatric examination by two qualified examiners. The judge also set a case status conference date of October 10, 2002. On October 10, 2002, the case was called for a status conference; however, because the defendant's attorney was not present, the docket reflects that "[e]vent not held — joint request." The status conference was rescheduled to November 15, 2002. On October 4, 2002, the two qualified examiners filed their reports with the court. Both examiners

---

[10]To be noted, respectfully, is that the dissent does not address the significance of this procedural history and the forward movement to trial after the original November, 2002, denial of the motion to dismiss — a movement that continued right up to the March, 2005, summary judgment.

[11]Also set forth in note 12 are additional dates in the case chronology that, although not directly material to the § 14(*a*) time calculations, nonetheless provide further relevant information concerning the chronology of the court docket, as the case moved to trial.

opined that the defendant was sexually dangerous within the definition of G. L. c. 123A.

As previously noted, two days before that status conference was to take place, on November 13, 2002, the defendant filed his motion to dismiss the c. 123A petition, followed by the Superior Court judge's November 15, 2002, denial of that motion, in turn followed by both the Commonwealth and the defendant proceeding to prepare for trial. Then, as described in greater detail *supra*, the next two years were consumed by pretrial proceedings, and extended by trial continuances requested (and allowed) jointly and separately by both the defendant and the Commonwealth.[12] A final pretrial conference was set for February 9, 2005, with trial scheduled to follow on February 28, 2005. On February 11, 2005, the defendant filed the subject summary judgment motion for dismissal, which, after hearing, was allowed on March 2, 2005. This appeal followed.

For the foregoing reasons, and with particular reliance on *Commonwealth* v. *Gagnon*, 439 Mass. 826 (2003), and *Commonwealth* v. *Kennedy*, 435 Mass. 527 (2001), the dismissal by summary judgment was error. Therefore, we reverse the allowance of summary judgment and remand for further proceedings consistent with this opinion.

*Judgment reversed.*

---

[12]Material court events have been placed in the chronology, *supra*. Attention should also be directed to the following dates to bring the case through its course. On November 15, 2002 (the same day as the denial of the dismissal motion), the case was also called for status and was scheduled for a further December 13, 2002, telephone status hearing, but that status date was rescheduled. On January 2, 2003, at the defendant's request, the case was continued to February 3, 2003. On February 3, 2003, the trial date was set for April 22, 2003. On April 18, 2003, a joint motion was allowed to continue the trial to June 4, 2003, to allow for further interview of the defendant by the qualified examiners. On June 2, 2003, the Commonwealth and the defendant filed a joint motion to reschedule the trial to July 28, 2003, which was allowed. On July 29, 2003, the court allowed the Commonwealth's motion to continue and then, on September 16, 2003, trial was continued again. On June 7, 2004, the defendant again moved to continue the trial date. Trial was next scheduled for September 27, 2004. The defendant notified the court that he was unavailable for the September 27, 2004, trial. On October 21, 2004, the court sent notices to appear for pretrial conference on November 3, 2004. On February 9, 2005, a final pretrial conference was scheduled, with trial to commence on February 28, 2005.

GREENBERG, J. (dissenting, with whom Beck, J., joins). Prior to September 10, 1999, which was the effective date of G. L. c. 123, § 14(*a*), inserted by St. 1999, c. 74, § 8, the statute at issue in this case, the Legislature repealed the provisions of an earlier version of G. L. c. 123A that provided for similar commitments, albeit under a different scheme. By setting up a new statutory framework — first involving temporary detention until probable cause could be determined, then, if so determined, permitting further detention for the completion of diagnostic examinations, and then requiring that the Commonwealth petition the court for trial within fourteen days of the filing of the qualified examiners' reports — the Legislature conditioned a petition's progress so as to protect the important liberty interests involved. The majority views these prophylactic measures as case flow management mechanisms. I respectfully dissent.

In this case, the Commonwealth has yet to file the § 14(*a*) petition. The Commonwealth offers no explanation for the omission other than its interpretation of § 14(*a*), to which it claims compliance because of the inclusion of a request for a jury trial in its initial petition for commitment. The majority adopts the same point of view and justifies the result because the jury claim supposedly put the defendant on notice that eventually there would be a trial, citing *Commonwealth* v. *Gagnon*, 439 Mass. 826, 830-832 (2003), and *Commonwealth* v. *Kennedy*, 435 Mass. 527, 530 n.3 (2001).

Section 14(*a*) provides that the district attorney "may" petition for trial of a defendant who has been temporarily committed to the Massachusetts Treatment Center for evaluation, but specifies that "[s]uch petition *shall* be made within 14 days of the filing of the report of the two qualified examiners" (emphasis supplied). See G. L. c. 123A, § 14(*a*), inserted by St. 1999, c. 74, § 8. A statute's words are to be accorded their ordinary meaning and approved usage. *Johnson* v. *District Attorney for the N. Dist.*, 342 Mass. 212, 215 (1961); *Burke* v. *Chief of Police of Newton*, 374 Mass. 450, 452 (1978). "The word 'shall' is ordinarily interpreted as having a mandatory or imperative obligation." *Hashimi* v. *Kalil*, 388 Mass. 607, 609 (1983). It takes a peculiar kind of analytical casuistry to accept that the one-line jury claim contained in the initial petition satisfies the clear imperative of § 14(*a*).

I recognize that not every failure to comply with the various deadlines specified in the sexually dangerous persons commitment statute requires dismissal of the commitment petition. See *Commonwealth* v. *Gagnon*, 439 Mass. 826, 827 (2003). Instead, the Supreme Judicial Court has indicated that only failures to comply with statutory requirements that specifically affect a defendant's liberty interest warrant dismissal of the petition. *Id.* at 830-831. We must, therefore, determine whether the statute's procedure for petitioning for trial protects the defendant's liberty interest in a way that the Commonwealth's approach does not.[1]

It is instructive to begin consideration of when dismissal is required for noncompliance with the statute by examining two cases that reached opposite results based on the Commonwealth's failures to follow time frames specified in § 13(*a*) of the statute.[2] In the first case, *Commonwealth* v. *Kennedy*, 435 Mass. at 530, the court upheld dismissal where the Commonwealth's qualified examiners failed to satisfy the requirement that they "shall" file reports with the court within forty-five days of the start of a defendant's sixty-day temporary commitment. Due to repeated clerical errors, the defendant had been committed for evaluation three times, for a period "vastly in excess of" sixty days, without the examiners' reports being filed. *Ibid.* Cognizant that c. 123A "provides a mechanism for a restraint on an individual's personal liberty," *ibid.*, quoting from

---

[1]In addition to the statutory claim that we consider here, the defendant advances a due process claim on appeal (although it is unclear whether said claim is based on the Federal Constitution or the Massachusetts Declaration of Rights). Because my analysis rests on statutory grounds alone, I have not addressed the due process argument.

[2]In *Commonwealth* v. *DeBella*, 442 Mass. 683, 689 (2004), the Supreme Judicial Court noted that the courts need not import the constraints of § 13(*a*) into the interpretation of § 14(*a*). We heed this comment, but note that in *DeBella*, the court confronted the question whether the deadline to commence trial had been violated, and concluded that it had not because § 14(*a*) allows for extensions of the trial commencement deadline. *Id.* at 688-689. In so ruling, the court stated that prior statements about the strict deadlines in § 13(*a*) were inapplicable to § 14(*a*) because it contained no language of extension. *Id.* at 689. Likewise, the statute includes no language of exception regarding the § 14(*a*) petitioning requirement. *Ibid.* Nothing in *DeBella* suggests that the approach developed in *Gagnon* in the § 13(*a*) context is inapplicable in considering whether to dismiss a petition for actual failure to comply with a requirement set out in § 14(*a*).

*Hashimi* v. *Kalil*, 388 Mass. at 610, the court ruled that the statute's clear time requirement was "mandatory," as are the express and nondiscretionary requirements of other statutes implicating substantive rights. *Ibid.*, citing *Hashimi* v. *Kalil*, *supra* at 609-610; *Commonwealth* v. *Cook*, 426 Mass. 174, 180-181 (1997). The court therefore, upheld dismissal.

Two years later, in *Commonwealth* v. *Gagnon*, 439 Mass. at 826, the court clarified that failure to meet a deadline specified in the statute does not warrant dismissal in every case. The court indicated that the fact that c. 123A as a whole deals with physical confinement is not enough to warrant dismissal for any violation, but that a court must look at the specific statutory requirement at issue to determine whether the Commonwealth's failure to comply actually affected a defendant's liberty interest. *Id.* at 830-831.

As in *Kennedy*, the qualified examiners in *Gagnon* failed to file their reports within the forty-five days allotted by the statute. *Id.* at 830. In *Gagnon*, however, the delay for filing the reports was only eight days, and the Commonwealth filed its § 14(*a*) petition for trial on the same day, and thus within the sixty-day temporary commitment period. *Ibid.* The court concluded that dismissal was not warranted where the "failure to meet the report filing deadline did not affect the defendant's liberty interest," *id.* at 827, because, "[i]n terms of a defendant's liberty interest, the relevant period [pursuant to § 13(*a*)] is the sixty-day time period," *id.* at 831. The real failing in *Kennedy*, then, was detaining the defendant for more than sixty days without conducting the examinations and filing a petition for trial which would have moved the proceeding forward. See *Commonwealth* v. *Kennedy*, 435 Mass. at 530-531. In *Gagnon*, where the failure was simply not meeting the forty-five-day examination deadline, the court declared that "the party adversely affected is the Commonwealth, as it must expedite its decision to seek trial and submit its petition in order to meet that requirement prior to the expiration of the sixty-day detention." *Commonwealth* v. *Gagnon*, 439 Mass. at 831.

Applying *Gagnon* to the instant case, the Commonwealth's failure warrants dismissal only if it implicates the defendant's liberty interest. As indicated, the Commonwealth argues that the defendant's liberty interest was not affected because the pre-

mature request for a jury trial put him on notice to prepare a defense and allowed the case to proceed to trial (if the court scheduled it of its own accord) without delay. I disagree. The § 14(a) petitioning requirement directly affects the defendant's liberty interest and following it properly protects the defendant's liberty interest in ways that the Commonwealth's approach does not.

A petition for trial under § 14(a) has serious consequences for a defendant's liberty interest. The petition triggers the statute's requirement that the person named in the petition shall be confined until the conclusion of the trial.[3] G. L. c. 123A, § 14(a); *Commonwealth* v. *Knapp*, 441 Mass. 157, 158 (2004). Furthermore, a defendant is subject to trial and the attendant potential for indefinite civil commitment should he be found sexually dangerous. See § 14. Along with these serious consequences of a decision by the Commonwealth to proceed to trial, we see certain protections inherent in the requirement that the petition for trial only be made *after* the examiners file their reports.

The § 14(a) petitioning requirement creates a default position where the commitment proceeding automatically terminates at the end of the temporary commitment period unless the Commonwealth petitions for trial. This, obviously, is a real protection that directly affects a defendant's liberty interest. The statute provides that the Commonwealth can only reverse the default termination of the proceeding after a deliberate, informed consideration, which includes a review of the qualified examiners' reports. The petitioning requirement protects the defendant's liberty interest by providing for the possibility that the Commonwealth will decide not to proceed against the defendant after reviewing this critical information, therefore limiting his detention to sixty days for evaluation.

---

[3]The deprivation of liberty associated with the mandatory detention pending the conclusion of trial can be significant. The statute requires that trial commence within sixty days of the filing of the trial petition, unless certain limited exceptions apply. See *Commonwealth* v. *DeBella*, 442 Mass. at 687-688. However, due to the variety of allowable continuances and extensions (many of which could come at the request of, or by agreement with, the defendant) it can take significantly longer for the trial to conclude. In the instant case, for example, the defendant's sixty-day temporary commitment period ended on October 19, 2002, approximately thirty-six months ago.

My conclusion that consideration of the examiners' reports is necessary before actually petitioning for trial avoids undermining the great value the statutory scheme places on the reports of the qualified examiners. As noted, the statute provides for a sixty-day deprivation of liberty "for the purpose of examination and diagnosis under the supervision of two qualified examiners." See § 13(*a*), inserted by St. 1999, c. 74, § 8. This assessment and diagnosis goes to an essential element of sexual dangerousness that a defendant suffer "from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined." G. L. c. 123A, § 1, as appearing in St. 1999, c. 74, § 6. "Whether a person suffers from a mental abnormality or personality defect, as well as the predictive behavioral question of the likelihood that a person suffering from such a condition will commit a sexual offense, are matters beyond the range of ordinary experience and require expert testimony." *Commonwealth* v. *Bruno*, 432 Mass. 489, 511 (2000). Indeed, this court has characterized "the entire statutory scheme [as one that] creates the mechanism for gathering the facts and conducting the analysis integral to that testimony." *Commonwealth* v. *Dube*, 59 Mass. App. Ct. 476, 482 (2003). There is something Kafkaesque, then, in the suggestion that the Commonwealth may make its decision to pursue a jury trial and indefinite commitment before examining the reports that will form a central basis of any eventual commitment.

That a well-informed decision to petition for trial, rather than a pro forma request for a jury trial, is required is further evidenced by the fact that the statute specifically allots the Commonwealth time to make the decision at this phase. As discussed *supra*, the statute provides for temporary commitment of a defendant for up to sixty days if probable cause is found. See § 13(*a*). The statute allocates up to forty-five days for the qualified examiners to conduct their reviews and file reports, *ibid.*, then provides fourteen days for the Commonwealth to make its decision whether to petition for trial, see § 14(*a*). As the statute provides for detention of a defendant during this time, it is evident that it contemplates serious consideration at this point whether to advance to trial. This is more than the mere "technicality" the Commonwealth suggests in its brief,

and it is not merely a case flow management issue as suggested by the majority, to confine a defendant for these fourteen days without requiring the Commonwealth to abide by the procedure that this period of confinement was crafted to allow.[4]

My view that the § 14(*a*) trial petitioning requirement constitutes a statutory protection of a defendant's liberty interest also finds support in prior Massachusetts cases. The *Gagnon* case, 439 Mass. at 830-832, made clear that failures to comply with requirements that actually affect a defendant's liberty interest warrant dismissal. In that case, dismissal was not warranted where the qualified examiners failed to file their reports within forty-five days because the Commonwealth had advanced the proceeding with a timely § 14(*a*) petition filed after consideration of the examiners' reports. *Id.* at 830. In concluding that Gagnon had not suffered an infringement of his liberty interest, the court stated that in addition to not showing that he was detained for extra time, "the defendant has not suggested that . . . the delay prevented the Commonwealth from having enough time properly to evaluate the qualified examiners' report and make an appropriate decision as to whether to file a petition for trial." *Id.* at 831. This is precisely the infringement present in the instant case. The *Gagnon* court reiterated the importance of the Commonwealth's adherence to the § 14(*a*) procedure, stating that "the party adversely affected is the Commonwealth, as it must expedite its decision to seek trial and submit its petition." *Ibid.* The Commonwealth is adversely affected because making the decision whether to proceed and filing the trial petition are real tasks, not mere technicalities that it can dispose of in advance as it attempted to do in the instant case. It is only after the Commonwealth files a petition under § 14(*a*)

---

[4]There is an additional troubling element to the majority's position. Civil commitment pursuant to c. 123A is nonretroactive and nonpunitive partly because commitment is based on current mental condition rather than a defendant's prior convictions for sex crimes. *Commonwealth* v. *Bruno*, 432 Mass. at 498, 501. Allowing the Commonwealth to make its ultimate decision to proceed to trial before the examiners filed their reports would suggest that the decision was based on past convictions. We would be reluctant to remove a statutory requirement created by the Legislature that adds credibility to the conclusion that civil commitment in the Commonwealth is based on present mental condition rather than past convictions.

that the court has discretion to continue a defendant's detention pending a trial on the merits.

The *Knapp* case, 441 Mass. at 168-169, also indicates that the § 14(*a*) petitioning requirement protects a defendant's liberty interest. The *Knapp* court determined that mandatory confinement pending the completion of trial is narrowly tailored to the government's compelling interest in protecting the public because such confinement is carefully circumscribed by an array of statutory protections, including the § 14(*a*) requirement that the Commonwealth petition for trial only after the examiners' reports are filed. *Id.* at 163-166. The court framed the due process inquiry as "whether the confinement of a convicted sexual offender alleged by the Commonwealth to be sexually dangerous, after a judge has found that probable cause exists to believe that the person is sexually dangerous, *and after the Commonwealth has petitioned for trial*, is narrowly tailored" (emphasis supplied). *Commonwealth* v. *Knapp*, 441 Mass. at 164. The court also specifically included the § 14(*a*) petitioning requirement in a list of statutory protections that render confinement pending trial narrowly tailored to the government interest, saying: "[i]n addition, the Commonwealth must have petitioned for trial after the respondent has been evaluated by at least two qualified examiners at the treatment center." *Id.* at 165. My conclusion in the instant case, that the § 14(*a*) petitioning requirement protects a defendant's liberty interest, is in accord with the Supreme Judicial Court's reference to such protection as a reason the scheme satisfies due process.

The *Gagnon* case reflects that legitimate concern. Although I would affirm dismissal in this case because, under the approach set forth in *Gagnon*, the statutory requirement at issue protects a defendant's liberty interest, I also note that this result would have the additional advantage of certainty and avoids relying on some other artifice, such as sanctions, left to the discretion of a trial judge in each case. Filing of the definitive petition with the requisite supporting qualified examiners' reports concerning a defendant's sexual dangerousness is not self-executing, and there is nothing in the language of § 14(*a*) that would deem this requirement satisfied by a jury claim contained in the initial petition.

For the reasons stated, I would affirm the judge's allowance of the defendant's motion to dismiss the Commonwealth's petition.