COMMONWEALTH *vs.* JOSEPH GROSS.

Suffolk. October 3, 2006. - November 20, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Sex Offender. Practice, Civil,* Sex offender. *Statute,* Construction.

A Superior Court judge properly dismissed the Commonwealth's petition under
   G. L. c. 123A, § 12 (*b*), seeking to commit the defendant as a sexually
   dangerous person, where the Commonwealth failed to file its petition for
   trial within fourteen days of the filing of the qualified examiners' reports as
   mandated by G. L. c. 123A, § 14 (*a*), and thereby neglected to give the
   court the authority to detain the defendant pending the outcome of trial
   [693-697]; moreover, the Commonwealth's request for trial in the original
   petition to commit the defendant pursuant to G. L. c. 123A, § 12 (*b*), did not
   effectively satisfy the requirement of § 14 (*a*), as the filing of a separate
   petition was required [697-700].

PETITION filed in the Superior Court Department on July 16,
2002.

Following the defendant's commitment pursuant to G. L.
c. 123A, § 13 (*a*), and additional pretrial proceedings, a motion
for summary judgment was heard by *E. Susan Garsh,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Robert E. Fox* for the defendant.

*David B. Mark,* Assistant District Attorney (*Tara Blackman,*
Assistant District Attorney, with him) for the Commonwealth.

SOSMAN, J. Once again, we are called on to decide whether the
Commonwealth's failure to meet procedural deadlines in sexually
dangerous person proceedings, G. L. c. 123A, §§ 13 (*a*) and
14 (*a*), warrants the dismissal of the Commonwealth's petition.
See *Commonwealth* v. *Parra,* 445 Mass. 262 (2005); *Com-
monwealth* v. *Gagnon,* 439 Mass. 826 (2003); *Commonwealth* v.
*Kennedy,* 435 Mass. 527 (2001). After the defendant's motion to
dismiss was initially denied, he refiled essentially the same mo-
tion as a motion for summary judgment. Another judge in the

Superior Court treated the summary judgment motion as a motion for reconsideration, allowed it, and dismissed the Commonwealth's petition. A divided panel of the Appeals Court reversed, *Commonwealth* v. *Gross*, 64 Mass. App. Ct. 829 (2005), and we granted the defendant's application for further appellate review. For the following reasons, we conclude that the petition was properly dismissed and therefore affirm the judgment.

1. *Background.* On July 16, 2002, the Commonwealth filed a petition, pursuant to G. L. c. 123A, § 12 (*b*), seeking to commit the defendant as a sexually dangerous person. On August 20, following a probable cause hearing, the defendant was committed to the Massachusetts Treatment Center for examination and diagnosis pursuant to G. L. c. 123A, § 13 (*a*), for a period not to exceed sixty days.[1] On October 4, forty-five days after the defendant was committed, the two qualified examiners filed their reports with the court pursuant to § 13 (*a*), opining that the defendant was a sexually dangerous person. The due date for the filing of the Commonwealth's petition for trial was therefore October 18, 2002, fourteen days after the filing of those reports. G. L. c. 123A, § 14 (*a*). No petition was filed by that date, and none has been filed since.

On November 13, 2002, with no petition for trial having been filed, the defendant filed a motion to dismiss and to vacate his commitment. The motion was denied. The defendant sought relief from a single justice of the Appeals Court, but was unsuccessful.

Over the course of the next two years, trial dates were set and then rescheduled at least five times, each time at the request or with the consent of the defendant, the Commonwealth, or both. The defendant remained confined during this period. On

_____

[1]At the conclusion of his findings on probable cause, the judge ordered the defendant committed to the Massachusetts Treatment Center "for further evaluation and trial of this case." The actual order of commitment ordered the defendant to be committed to the treatment center "for a period not to exceed 60 days for the purpose of examination and diagnosis." The statute allows a commitment order "for a period not exceeding 60 days for the purposes of examination and diagnosis." G. L. c. 123A, § 13 (*a*). A commitment order for a longer period, or for any other purpose, cannot be issued on the mere finding of probable cause.

February 11, 2005, the defendant filed a motion for summary judgment of dismissal, which reiterated the arguments made in his original motion to dismiss based on the Commonwealth's failure to file a timely trial petition. Treating the motion as a motion for reconsideration, another judge (not the judge who originally denied the motion to dismiss) allowed the motion and dismissed the petition.[2]

2. *Discussion.* To date, we have considered whether dismissal is the appropriate remedy for delays in the filing of the qualified examiners' reports. See *Commonwealth* v. *Parra, supra* at 266 (dismissal warranted where reports filed eighty-four days after deadline); *Commonwealth* v. *Gagnon, supra* at 830-831 (dismissal not warranted where reports filed eight days late but petition for trial filed before end of sixty-day commitment period); *Commonwealth* v. *Kennedy, supra* at 529-531 (dismissal appropriate where reports filed many months late). In each case, the deciding factor was whether the delay in filing had caused the defendant to suffer a loss of liberty, i.e., a confinement greater than the maximum sixty-day commitment specified in § 13 (*a*). "[T]he liberty interests at stake compel strict adherence to the time frames set forth in the statute." *Id.* at 531. "The statute's deadlines are mandatory to protect a defendant's liberty interest, and any delay by the Commonwealth that results in a confinement exceeding sixty days is a violation of the statute. . . . [D]ismissal is the appropriate remedy for *any* violation of the sixty-day deadline, absent extraordinary circumstances" (emphasis added). *Commonwealth* v. *Parra, supra* at 263.

---

[2]Before the motion judge, the Commonwealth argued that there was no basis for reconsidering the denial of the original motion to dismiss. The Commonwealth does not press the point on appeal. Although "there is no duty to reconsider a case, an issue, or a question of fact or law, once decided," the court retains the authority to do so. *King* v. *Globe Newspaper Co.,* 400 Mass. 705, 707 (1987), cert. denied, 485 U.S. 940 and 485 U.S. 962 (1988), quoting *Peterson* v. *Hopson,* 306 Mass. 597, 601 (1940). Among other permissible grounds for reconsidering a previously decided issue, the prior decision may be reconsidered if it was "clearly erroneous and would work a manifest injustice." *King* v. *Driscoll,* 424 Mass. 1, 8 (1996), quoting *United States* v. *Rivera-Martinez,* 931 F.2d 148, 151 (1st Cir.), cert. denied, 502 U.S. 862 (1991). As discussed below, we conclude that the original denial of the defendant's motion was an error of law, and the defendant's continued detention subjected him to manifest injustice.

Here, the qualified examiners' reports were timely filed, but the Commonwealth then failed to file a petition for trial. Pursuant to § 14 (*a*), if the Commonwealth elects to proceed with its petition following receipt of the qualified examiners' reports, it "shall" file a petition for trial "within" fourteen days of the filing of the qualified examiner's reports. In this context, where liberty interests are at stake, the term "shall" is mandatory. *Commonwealth* v. *Kennedy, supra* at 530. See *Commonwealth* v. *Cook*, 426 Mass. 174, 180-181 (1997); *Hashimi* v. *Kalil*, 388 Mass. 607, 609-610 (1983). That the filing of a petition for trial within those fourteen days is mandatory is also implicit in the next sentence of the statute: "*If such petition is timely filed within the allowed time*, the court shall notify the person named in the petition and his attorney, the district attorney and the attorney general that a trial by jury will be held within 60 days to determine whether such person is a sexually dangerous person" (emphasis added). G. L. c. 123A, § 14 (*a*). In short, if there is no timely filed petition for trial, the case does not proceed to trial.

Here, when the Commonwealth failed to file its petition for trial within fourteen days of the filing of the qualified examiners' reports, the Commonwealth failed to meet one of the mandatory deadlines set by the statute. In the absence of any petition for trial and the triggering of the trial process, the order of commitment expired at the end of sixty days. G. L. c. 123A, § 13 (*a*). Holding the defendant beyond that sixty-day period deprived him of his liberty in a manner not permitted by the statute.

*a. Significance of the petition for trial.* The Commonwealth, acknowledging that it did not file a petition for trial,[3] seeks to avoid dismissal by belittling the requirement that it file a "one-sentence" trial petition and labeling its failure to do so as "a purely technical violation." We reject the Commonwealth's arguments. Not only is the filing of a petition for trial made mandatory by the wording of § 14 (*a*), but it plays a crucial role in setting the schedule for the remainder of the proceedings. As discussed above, the filing of the petition for trial triggers

---

[3]The Commonwealth's alternative argument that its request for trial in its original petition under G. L. c. 123A, § 12 (*b*), satisfies the requirement under G. L. c. 123A, § 14 (*a*), of a petition for trial is addressed *infra.*

the requirement that the court notify the defendant that trial will be held within sixty days (absent continuances for good cause shown or in the interests of justice), and thus moves the proceedings forward to trial. G. L. c. 123A, § 14 (*a*). And, more importantly for present purposes, it is the petition for trial that gives the court the authority to detain the defendant: "The person named in the petition shall be confined to a secure facility for the duration of the trial." *Id.* Whereas § 13 (*a*) authorizes only a sixty-day commitment to the "treatment center" for purposes of evaluation, the filing of a petition for trial under § 14 (*a*) authorizes an order of detention at any "secure facility" pending the outcome of the trial. Once the § 13 (*a*) sixty-day commitment order expires by its own terms, a timely filed petition for trial is a prerequisite to any further period of confinement.

The Commonwealth also argues that the failure to file a petition for trial should not be treated as such an egregious error here because the filing of the qualified examiners' reports provided substantive justification for continuing to hold the defendant. However, the Legislature did not make continued detention hinge on the substantive contents of the qualified examiners' reports,[4] but on the Commonwealth's affirmative decision, as articulated in its petition for trial, to proceed to trial. See *Commonwealth* v. *Knapp*, 441 Mass. 157, 160 (2004) ("[]after" filing of reports, "Commonwealth must then decide whether to move for trial," and if it does so, defendant must be confined pending trial). The Appeals Court dissenting opinion aptly described the § 14 (*a*) requirement of a trial petition as "creat[ing] a default position where the commitment proceeding terminates at the end of the temporary commitment period unless the Commonwealth petitions for trial," meaning that it is up to the Commonwealth to "reverse the default termination of the proceeding." *Commonwealth* v. *Gross*, 64 Mass. App. Ct. 829, 841 (2005) (Greenberg, J., dissenting). That "default posi-

---

[4] To date, we have not decided whether "the statute implicitly requires that at least one of the qualified examiners support the position that a defendant is sexually dangerous in order for the Commonwealth to proceed to trial, or whether the continued detention of a defendant would be unconstitutional if both qualified examiners' reports indicated that a defendant was not a sexually dangerous person." *Commonwealth* v. *Poissant*, 443 Mass. 558, 560 n.6 (2005).

tion," terminating the case absent some affirmative step by the Commonwealth, does not depend on what the qualified examiners have opined. Rather, whatever their opinions were, the requirement of a trial petition safeguards a defendant's liberty interests by preventing the case from drifting in limbo while a defendant remains confined.

The Commonwealth argues that, in this case, the lack of a petition for trial did not result in any such delay or prevent the setting of a trial date and the various interim hearings and conferences leading thereto.[5] The fact that the court, without a petition before it, proceeded as if it did have such a petition does not change the fact that no petition was filed. Nor can we base our conclusions about the importance of a petition for trial on the specific procedural management of this case. The absence of a petition could, in some circumstances, cause a case to "fall through the cracks," with a defendant wrongfully detained until such time as someone brought the matter to the court's attention. We think it best to enforce these deadlines strictly in all cases, and not to rely on the trial court's ability to track and schedule sexually dangerous person proceedings even in the absence of the statutorily mandated filings.[6]

[5]On August 22, 2002, the court scheduled the case for a status conference to be held on October 10, one week prior to the expiration of the commitment order. The status conference did not go forward on that date (according to the docket, due to a "joint request") and was rescheduled for November 15. The defendant's motion to dismiss was filed on November 13, the November 15 status conference was held, and the motion was denied on that date. Further status conferences, hearing dates, and trial dates were scheduled thereafter.

[6]In a related argument, the Commonwealth suggests that if the defendant had waited until the sixty-day time period for trial had run (G. L. c. 123A, § 14 [*a*]), he could then have pursued a meritorious motion to dismiss on the ground that his total period of confinement exceeded the permissible sixty-day period of commitment to the treatment center plus the sixty-day period of detention awaiting trial. In short, the Commonwealth contends that until a defendant has been confined for more than 120 days without being tried, there can be no impermissible infringement of liberty. We reject the notion that a person held beyond the expiration of the original commitment order suffers no loss of liberty. Such a defendant should not have to endure another sixty days of confinement, waiting to see if the court schedules a trial despite the lack of a trial petition, before asking to be released. Even where the total period of confinement has exceeded 120 days, our analysis has focused on whether the confinement exceeded the original sixty-day commitment period. See *Commonwealth* v. *Parra*, 445 Mass. 262, 265, 266 (2005) (where statute provides that defendant's "evaluation period shall not exceed sixty days, and sets forth

The Commonwealth finally suggests that the petition for trial merely serves as notice of the Commonwealth's intention to proceed to trial and that, by way of the court's denial of the defendant's original motion to dismiss, the defendant received adequate notice. This argument not only ignores all of what we have said above concerning the significance of the petition for trial — it serves functions above and beyond mere notice — but also ignores the fact that the court's ruling on the motion to dismiss was not made until November 15, 2002, four weeks after the defendant was entitled to receive "notice" by way of the petition for trial. By that time, the defendant had already been held four weeks past the date on which the commitment order expired.

b. *Request for trial in § 12 (b) petition.* In the alternative, the Commonwealth contends that, by requesting a "[t]rial by jury on the merits" in its original § 12 (*b*) petition, it effectively satisfied the requirement that it "petition the court for trial."[7] G. L. c. 123A, § 14 (*a*). See *Commonwealth* v. *Knapp, supra* at 158 n.3 (declining to address whether § 14 [*a*] petition for trial could be filed "concurrently" with original § 12 [*b*] petition). We reject the Commonwealth's argument and hold that § 14 (*a*) requires the filing of a separate petition for trial after the filing of the qualified examiners' reports.

Under § 12 (*b*), an original petition must "alleg[e] that the prisoner or youth is a sexually dangerous person and stat[e] sufficient facts to support such allegation." Nothing else is required. The filing itself triggers the probable cause hearing (see G. L. c. 123A, § 12 [*c*]), and the proceedings then run their course depending on what happens at each subsequent step. Contrary to the Commonwealth's argument, the original petition, standing alone, does not "set the trial process in motion." Whatever

no exceptions," defendant's liberty interests are violated when "confinement falls outside the sixty-day limitation imposed by the statute").

[7]The Commonwealth's original petition requested a probable cause hearing; an order committing the defendant to the treatment center; an examination by two qualified examiners; "[t]rial by jury on the merits"; "[a] finding that the defendant is a sexually dangerous person, as that term is defined by M.G.L. ch. 123A, Section 1"; and "[a] commitment of the defendant to the Massachusetts Treatment Center for an indeterminate period of a minimum of one day and a maximum of such person's natural life."

customs of pleading may have evolved in sexually dangerous person proceedings, requesting each of the steps in the original petition does not relieve the Commonwealth of its obligations with respect to each of those steps, including the requirement that it file a petition for trial at the appropriate point in the sequence.

The Commonwealth's interpretation ignores the requirement that the petition for trial be filed "within" fourteen days of the qualified examiners' reports. G. L. c. 123A, § 14 (*a*). The plain meaning of the word "within" is "[i]nside the limits or extent of in time, degree or distance." American Heritage Dictionary 1471 (1981). In the context of § 14 (*a*), the point in time to which the term "within" refers is the filing of the qualified examiners' reports, which, in this case, occurred on October 4, 2002. The date of the original § 12 (*b*) petition, July 16, 2002, is not "within" fourteen days of October 4, 2002. Indeed, in legal usage, the term "within," when describing a time frame during which some step must be taken, ordinarily connotes that that step be taken after the referenced event. See, e.g., Mass. R. A. P. 4 (a), as amended, 430 Mass. 1603 (1999) (notice of appeal shall be filed "within thirty days of the date of the entry of the judgment appealed from"). The most straightforward reading of § 14 (*a*) is that the petition for trial must be filed within fourteen days of and *after* the filing of the qualified examiners' reports, and we see no reason to deviate from that straightforward reading.

All the purposes served by the trial petition, as described in the preceding section, would be eviscerated if the petition for trial could be filed at the commencement of the case. Rather, the petition needs to be filed in the sequence outlined by the statute, i.e., after receipt and filing of the qualified examiners' reports. Indeed, if a request for trial in an original § 12 (*b*) petition qualified as a § 14 (*a*) petition for trial, the time frames in the statute would no longer make sense. Absent continuances for good cause or in the interests of justice, trial is to be held within sixty days of the filing of the petition for trial. G. L. c. 123A, § 14 (*a*). If the sixty-day period for holding trial began to run as of the filing of any original § 12 (*b*) petition that requested "trial," that sixty-day period would be running throughout the time it took to hold the § 12 (*c*) probable cause

hearing and issue any commitment order, and trial would have to be held before the period of commitment had run and before the qualified examiners' reports were even available. Not surprisingly, the court below did not issue any § 14 (*a*) notice of trial in response to the mere request for "[t]rial on the merits" in the Commonwealth's § 12 (*b*) petition.

In arguing that its trial petition should not have to await the filing of the qualified examiners' reports, the Commonwealth correctly points out that nothing in the statute expressly compels it to review or to rely on the qualified examiners' reports before proceeding with its petition. However, the structure of the statute contemplates that the Commonwealth will use those fourteen days between receipt of the reports and the filing of any trial petition to assess its position in light of the information contained in those reports. A defendant continues to be held during those fourteen days — if, as the Commonwealth argues, all that is at stake is the "technical" requirement of a "one-sentence petition," it would be difficult to justify a two-week deprivation of liberty while the Commonwealth met that mere "technicality." Instead, giving the Commonwealth fourteen days in which to petition for trial suggests that the Legislature intended that the Commonwealth may revisit or refine its initial position based on the extensive information that has since been gathered, and that it is to make an affirmative decision to go forward in light of all that information, not just an automatic determination to continue whatever it launched back in the original § 12 (*b*) petition based on the comparatively minimal information that was then available.[8] "The forty-five day deadline for the qualified examiners' report appears intended to give the Commonwealth a full two weeks in which to file its petition for trial. Where, as here, the report is slightly late, the party adversely affected is the Commonwealth, as it must expedite its decision to seek trial and submit its petition in order to meet that requirement prior to the expiration of the sixty-day detention." *Commonwealth* v. *Gagnon*, 439 Mass. 826, 831

---

[8]Despite a finding of probable cause, qualified examiners, who have the benefit of direct examination and a longer period of observation, sometimes conclude that a defendant is *not* sexually dangerous. See, e.g., *Commonwealth* v. *Poissant*, 443 Mass. 558, 559 (2005).

(2003).[9] Indeed, that the Commonwealth has the ability to make such an informed decision when it petitions for trial is one of the factors that we considered when holding that detention while awaiting trial under § 14 comported with due process. See *Commonwealth* v. *Knapp*, 441 Mass. 157, 165-166 (2004).

Accordingly, we interpret § 14 (*a*) as requiring the filing of a distinct petition for trial after the qualified examiners' reports have been filed. A request for trial in the original § 12 (*b*) petition, or a trial petition filed prior to the filing of the qualified examiners' reports, is not effective, as it would fail to serve all of the purposes that are to be served by the petition for trial. If the Commonwealth does not file a timely petition for trial, the case is to be dismissed, as "dismissal is the appropriate remedy for any violation of the sixty-day deadline, absent extraordinary circumstances." *Commonwealth* v. *Parra*, 445 Mass. 262, 263 (2005).

*Judgment affirmed.*

---

[9]In that case, we also noted the absence of any allegation that the brief delay in filing the reports had "prevented the Commonwealth from having enough time properly to evaluate the qualified examiners' report and make an appropriate decision as to whether to file a petition for trial." *Commonwealth* v. *Gagnon*, 439 Mass. 826, 831 (2003).