## Commonwealth vs. William Knapp.

Suffolk. December 2, 2003. - March 10, 2004.

Present: Marshall, C.J., Greaney, Ireland, Spina, Sosman, & Cordy, JJ.

*Sex Offender. Constitutional Law,* Sex offender, Probable cause. *Due Process of Law,* Sex offender. *Probable Cause. Practice, Criminal,* Probable cause hearing, Probation.

Discussion of the statute governing civil commitment of sexually dangerous persons, G. L. c. 123A. [159-160]

This court concluded that the use of mandatory language in G. L. c. 123A, §§ 13(*a*) and 14(*a*), left no doubt that the Legislature intended confinement of a prisoner at a treatment center or another secure facility to be mandatory after a finding of probable cause that the prisoner is a sexually dangerous person, and that the language of § 14 did not grant a judge the authority or discretion to release any such person from secure confinement on probationary conditions pending trial, or limit the confinement of such persons only to the period of actual court proceedings. [161-163, 169]

This court concluded that the confinement of a convicted sexual offender alleged by the Commonwealth to be sexually dangerous, after a judge had found that probable cause existed to believe that the person was sexually dangerous, and after the Commonwealth had petitioned for trial, was narrowly tailored to furthering the Commonwealth's legitimate and compelling interest in protecting the public from harm by persons likely to be sexually dangerous [163-166]; furthermore, such confinement was implemented in a fair manner under the civil commitment statute, G. L. c. 123A, and therefore satisfied the requirements of procedural due process under the United States Constitution [166-169].

Civil action filed in the Supreme Judicial Court for the county of Suffolk on July 8, 2003.

The case was reported by *Spina,* J.

*Tracey A. Cusick,* Assistant District Attorney (*Lisa B. Beatty,* Assistant District Attorney, with her) for the Commonwealth.

*Robert E. Fox* for the defendant.

Cordy, J. The question we must decide on a reservation and report from a single justice of this court is whether any provision of G. L. c. 123A permits the release of a person on

probationary conditions after a judge has found probable cause to believe that the person is sexually dangerous and the Commonwealth has petitioned for a trial. We conclude that the statutory scheme requires that such a person be confined in a secure facility until the conclusion of trial, and that such a requirement does not violate the due process protections of the United States Constitution.[1]

*Background.* The respondent, William Knapp, has twice been convicted of sexual offenses.[2] He was scheduled to be released from custody on April 14, 2001. On March 19, 2001, the Commonwealth filed a petition pursuant to G. L. c. 123A, § 12 (*b*), alleging him to be a sexually dangerous person who should be committed under G. L. c. 123A, § 14 (*d*). After an evidentiary hearing, a Superior Court judge found "credible evidence . . . to establish probable cause to find that Knapp is a sexually dangerous person," and committed him to the Massachusetts Treatment Center (treatment center) for a sixty-day period of examination. See G. L. c. 123A, § 13 (*a*). At the conclusion of the examination period, the Commonwealth moved that Knapp be further committed pending the trial on its petition.[3] On June 22, 2001, the judge denied the motion and ruled that Knapp could be released pending trial to in-house confinement once proper electronic monitoring was secured. He eventually was

---

[1]The respondent does not make a separate argument under the due process provisions of the Declaration of Rights of the Massachusetts Constitution.

[2]Knapp was convicted in 1978 of assault with intent to rape, and in 1988 of assault with intent to murder, assault with intent to rape, assault and battery by means of a dangerous weapon, and indecent assault and battery on a person who has attained age fourteen (there is some discrepancy in the defendant's brief and in parts of the record; nonetheless, it appears certain that the victim of the indecent assault and battery had attained age fourteen).

[3]Instead of petitioning for a trial within fourteen days of the filing of the qualified examiners' report, as G. L. c. 123A, § 14 (*a*), envisions, the Commonwealth included its petition for a trial within its initial petition alleging that Knapp is a sexually dangerous person. Knapp moved to dismiss the Commonwealth's petition for commitment on this basis. After a hearing, the Superior Court judge denied the motion, holding that the Commonwealth's combined filing fulfilled "the spirit and letter of the statute." Knapp argues here that the Commonwealth's combined filing makes its petition invalid and therefore would render his own commitment illegal. The question whether the Commonwealth may file its § 14 (*a*) petition concurrently with its § 12 (*b*) petition was not reserved and reported by the single justice; therefore, we do not address it. See *Sheriff of Suffolk County* v. *Pires*, 438 Mass. 96, 97 n.3 (2002).

released.[4] The Commonwealth appealed from this order to a single justice of the Appeals Court, who declined to grant relief. Pursuant to G. L. c. 211, § 3, the Commonwealth then petitioned for review by a single justice of this court, contending that, after a judge has found probable cause and the Commonwealth has petitioned for trial, a respondent must be confined to a secure facility until (and throughout) his commitment trial. Knapp opposed the Commonwealth's petition, asserting that G. L. c. 123A could be interpreted to permit his release and that automatic pretrial detention would violate his due process rights. The single justice reserved and reported the issue to the full court.[5]

*Discussion.* Finding "the danger of recidivism posed by sex offenders . . . to be grave and that the protection of the public from these sex offenders is of paramount interest to the government," the Legislature in 1999 enacted a mechanism, codified at G. L. c. 123A, to provide for the civil commitment of individuals convicted of sexual offenses who are found to be sexually dangerous persons. St. 1999, c. 74, § 1.[6] The preamble to the legislation proclaimed that "[t]he deferred operation of this act would tend to defeat its purpose, which is to protect forthwith the vulnerable members of our communities," and therefore "declared [it] to be an emergency law." St. 1999, c. 74, preamble.

General Laws c. 123A sets forth strict procedures that courts and the Commonwealth must follow with regard to the civil commitment of sexually dangerous persons. Section 12 (*a*) requires facilities holding persons convicted of sexual offenses

[4]Knapp is now living under probationary conditions and monitored by an electronic bracelet while he awaits his commitment trial.

[5]The reservation and report states: "I hereby reserve and report the case without decision to the Full Court for determination of whether G. L. c. 123A, § 13 (*a*) and § 14 (*a*) permit a judge to release a [respondent] on probationary conditions pending trial on the Commonwealth's petition for commitment as a sexually dangerous person."

[6]In the circumstances of this case, a sexually dangerous person is defined as "any person who has been . . . convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility." G. L. c. 123A, § 1.

to notify the office of the appropriate district attorney and the Attorney General six months before their scheduled release. Section 12 (*b*) instructs that if either determines that the person to be released is likely to be sexually dangerous, they may file a petition supported by sufficient facts alleging as much. On the filing of such a petition, § 12 (*c*) directs the court to hold a hearing to determine whether there is probable cause to believe that the person is sexually dangerous. If, after the probable cause hearing, the judge finds that there is sufficient admissible evidence on each element such that a jury could find that the person is sexually dangerous beyond a reasonable doubt (probable cause), see *Commonwealth* v. *Reese*, 438 Mass. 519, 524 (2003), § 13 (*a*) provides that the judge "shall" commit the person to the treatment center for up to sixty days for examination and diagnosis by two qualified examiners. Those examiners must file a written report within forty-five days, and within fourteen days thereafter (or within sixty days of the commitment, see *Commonwealth* v. *Gagnon*, 439 Mass. 826, 831 [2003]), the Commonwealth must then decide whether to move for trial. If it does, § 14 (*a*) directs that the person "shall be confined to a secure facility for the duration of the trial," and that the trial must occur within sixty days.

The language that the Legislature has employed and the procedures that it has set forth demonstrate its clear "concern with protecting the public from harm by persons . . . who are likely to be sexually dangerous." *Commonwealth* v. *Bruno*, 432 Mass. 489, 504 (2000). The statute's strict timetables and express recitations of respondents' rights throughout the process also demonstrate the Legislature's simultaneous concern for individuals' liberty.[7] We interpret the legislation in light of these principles.

---

[7]At the probable cause hearing, the statute provides that the person named in the petition has the right to assistance of counsel, to present evidence, to cross-examine witnesses, and to view and copy all petitions and reports in the court file. G. L. c. 123A, § 12 (*d*). During the examination period, all documentation provided to the qualified examiners must be provided to the person's counsel, *id.* at § 13 (*c*), and the person may retain his own psychologist or psychiatrist (at court expense if the person is indigent), *id.* at § 13 (*d*). Should a commitment trial occur, the statute guarantees assistance of counsel and independent examinations (and provides such for indigent persons), requires that independent examiners have access to the person and to the

Reading the statute as a cohesive whole, as we must, *Haines v. Town Manager of Mansfield*, 320 Mass. 140, 142 (1946), we conclude that it establishes a scheme that allocates discretion by the level of scrutiny that has been applied to the Commonwealth's allegation that a person is sexually dangerous. Section 12 of the statute sets out the procedure to be followed up through the probable cause hearing. In this context, § 12 (*e*) provides that "[i]f the person . . . is scheduled to be released [from prison] . . . prior to the court's probable cause determination, the court . . . *may* temporarily commit such person to the treatment center pending disposition of the petition," and that a person so committed "may move the court for relief from such temporary commitment *at any time prior to the probable cause determination*" (emphases added). We have interpreted § 12 (*e*) to mean that, before a finding of probable cause to support the Commonwealth's allegation (while any potential danger has yet to be fully demonstrated or examined), a judge is permitted to either release or temporarily commit the respondent (if his prison sentence has expired) depending on the adequacy of the Commonwealth's showing of evidence of sexual dangerousness. See *Commonwealth v. Bruno*, *supra* at 510-511 (showing necessary to warrant temporary commitment under § 12 [*e*] must be equivalent of "probable cause to arrest" and include some expert evidence).[8]

After a finding of probable cause, however, §§ 13 and 14 of the statute operate to deprive the judge of discretion with respect to whether the person will be committed. At this point, "the prisoner . . . *shall* be committed to the treatment center . . .

person's relevant records, and provides that the person is entitled to have process issued from the court to secure witnesses to testify on his behalf. *Id.* at § 14 (*b*). Finally, the Commonwealth bears the burden of proving to a jury that the person is sexually dangerous "beyond a reasonable doubt." *Id.* at § 14 (*d*).

[8] In her June 12, 2003, order, the judge cited *Commonwealth* v. *Blanchette*, 54 Mass. App. Ct. 165 (2002), to support "imposi[tion of] conditions of supervised probation in lieu of detention in the Treatment Center." The Appeals Court, however, was addressing commitment before a finding of probable cause, not after. See *id.* at 167 n.4. Its instruction to trial judges that they may consider imposing conditions of supervised probation in lieu of a temporary commitment to the treatment center is therefore consistent with our interpretation of § 12 (*e*), but not applicable after a finding of probable cause.

for the purpose of examination" (emphasis added). § 13 (*a*). If, after examination, the Commonwealth petitions for a trial, "the court shall notify the person . . . that a trial by jury will be held within [sixty] days," and "[t]he person . . . *shall* be confined to a secure facility for the duration of the trial" (emphasis added). § 14 (*a*). The use of this language leaves no doubt that the Legislature intended confinement at the treatment center or another secure facility to be mandatory after a finding of probable cause.[9]

Knapp argues, however, that § 14 (*e*) recognizes judicial discretion to consider relief from confinement even after a probable cause finding, as the circumstances in each case may require. He points particularly to language in § 14 (*e*) that, on its face, seems to parallel the language of § 12 (*e*). His reading of § 14 (*e*) is too broad. Although it provides that "[i]f the person named in the petition is scheduled to be released from [custody] at any time prior to the final judgment, the court *may* temporarily commit such person to the treatment center pending disposition of the petition" (emphasis added), this language is preceded by language within the same section of the statute

[9]Massachusetts is not the only State to require confinement after a judge determines that probable cause exists to believe that a person is sexually dangerous. See, e.g., Ariz. Rev. Stat. § 36-3705(B) (West 2003) ("If the judge determines that probable cause exists . . . the judge shall order that the person be detained . . ."); Cal. Welf. & Inst. Code § 6602(a) (West Supp. 2004) ("If the judge determines that there is probable cause, the judge shall order that the person remain in custody . . ."); Fla. Stat. Ann. § 394.915(5) (West 2002) ("After a court finds probable cause . . . the person must be held in custody . . ."); Kan. Stat. Ann. § 59-29a05(a) (Supp. 2002) ("If [a probable cause] determination is made, the judge shall direct that person be taken into custody"), § 59-29a20 ("Any person for whom a petition . . . has been filed . . . shall not be eligible for . . . any . . . measure[] releasing the person from the physical protective custody of the state . . ."); N.J. Stat. Ann. § 30:4-27.28(g) (West Supp. 2003) ("If the court finds that there is probable cause . . . [i]n no event shall the person be released from confinement prior to the final hearing"); Va. Code Ann. § 37.1-70.7(C) (Supp. 2003) ("If the judge finds that probable cause exists . . . the judge shall order that the [person] remain in . . . custody"); Wash. Rev. Code Ann. § 71.09.040(1) (West 2002) ("If [a probable cause] determination is made the judge shall direct that the person be taken into custody"), § 71.09.040(4) ("In no event shall the person be released from confinement prior to trial"); Wis. Stat. Ann. § 980.04(3) (West 1998 & Supp. 2003) ("If the court determines . . . that there is probable cause . . . the court shall order that the person be taken into custody . . .").

making secure confinement mandatory after a probable cause finding and the Commonwealth's petition for trial. See § 14 (*a*). Section 12 contains no such limiting predicate language. To the contrary, it contains language — notably absent from § 14 — affording the respondent an avenue to obtain relief from temporary confinement at the treatment center prior to his probable cause hearing. See § 12 (*e*). Thus, in the context of § 14, of which it is a part, we interpret § 14 (*e*) as intending only to authorize the transfer of a respondent from prison to the treatment center if his sentence is scheduled to expire after the probable cause hearing but before the final disposition of the commitment petition. See *Commonwealth* v. *McLeod*, 437 Mass. 286, 287-289 (2002). We do not interpret it to grant a judge the authority or discretion to release any such person from secure confinement.[10]

Knapp further argues that the language in § 14 (*a*) directing the confinement of persons "for the duration of the trial" applies only to the period of actual court proceedings, and does not apply to the period between the finding of probable cause and the beginning of the trial itself. This makes little sense. The Legislature's stated purpose is to protect the public from harm by persons likely to be sexually dangerous. A sexually dangerous person would not pose a greater risk to the public during the court proceedings than before, and we find it implausible that the Legislature would require confinement only during proceedings simply to reduce the risk of flight during that limited period. Once a judge has found that probable cause exists to believe that a person is sexually dangerous and the Commonwealth has petitioned for trial (as it must to set the trial process in motion), the clear intent and requirement of the statute is that the person be confined in a secure facility.

Our analysis does not conclude with interpreting the statutory

---

[10]Knapp also contends that § 14 (*e*) permits a judge to ignore the language of § 13 (*a*) that, after a finding of probable cause, a respondent "*shall* be committed to the treatment center" for examination, and to release a respondent on the condition that such an examination be performed on an outpatient basis (emphasis added). While these circumstances are not presented here, our reasoning with respect to the limited meaning of § 14 (*e*) would apply as equally to the mandatory language of § 13 (*a*) as it does to that of § 14 (*a*).

language. While commitment proceedings under G. L. c. 123A are civil in nature, "the potential deprivation of liberty to those persons subjected to [them] 'mandates that due process protections apply.' " *Commonwealth* v. *Bruno*, 432 Mass. 489, 502 (2002), quoting *Commonwealth* v. *Travis*, 372 Mass. 238, 250 (1977).

" ' "[S]ubstantive due process" prevents the government from engaging in conduct that "shocks the conscience," *Rochin* v. *California*, 342 U.S. 165, 172 (1952), or interferes with rights "implicit in the concept of ordered liberty," *Palko* v. *Connecticut*, 302 U.S. 319, 325-326 (1937).' *United States* v. *Salerno*, 481 U.S. 739, 746 (1987)." *Aime* v. *Commonwealth*, 414 Mass. 667, 673 (1993). If the government's action impairs a fundamental right, that action must be "narrowly tailored to further a legitimate and compelling governmental interest" in order to survive substantive due process review. *Id.* Procedural due process, the second part of our constitutional analysis, "requires that a statute or governmental action that has survived substantive due process scrutiny be implemented in a fair manner." *Id.* at 674.

The right of an individual to be free from physical restraint is a paradigmatic fundamental right. "[F]reedom from physical restraint 'has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.' " *Kansas* v. *Hendricks*, 521 U.S. 346, 356 (1997), quoting *Foucha* v. *Louisiana*, 504 U.S. 71, 80 (1992). Confinement, therefore, must be narrowly tailored to further a legitimate and compelling governmental interest. As expressed in the preamble to the 1999 emergency legislation, the legislative interest at stake is the protection of the public from harm by persons likely to be sexually dangerous. See *Commonwealth* v. *Bruno, supra* at 504. We already have held that interest to be both legitimate and compelling. *Id.* We now consider whether the confinement of a convicted sexual offender alleged by the Commonwealth to be sexually dangerous, after a judge has found that probable cause exists to believe that the person is sexually dangerous, and after the Commonwealth has petitioned for trial, is narrowly tailored

to furthering this interest. We conclude that it is.

In *Commonwealth* v. *Bruno, supra,* we held that the temporary commitment of a person to a treatment center prior to the probable cause determination, as allowed by G. L. c. 123A, § 12 (*e*), is narrowly tailored to the Legislature's expressed interest and does not violate substantive due process rights. *Id.* at 504. In so holding, we noted that the Commonwealth may petition for a probable cause hearing only when it can show by "sufficient facts" that it is "likely" that a person is sexually dangerous, that the Commonwealth may not seek temporary commitment under § 12 (*e*) unless it satisfies the probable cause to arrest standard with a "sufficient showing" based on "evidence before the court" that the person is likely to commit future harm, that temporary commitment is in a treatment center rather than a correctional facility, and that the temporarily committed person may seek relief at any time before the probable cause determination. *Id.* at 503-504, 507-508. We evaluate the nondiscretionary commitment mandated by § 14 (*a*) in light of our previous analysis of the temporary commitment allowed by § 12 (*e*).

Although the confinement described in § 14 (*a*) is automatic and nondiscretionary, it does not occur in a vacuum. Before a person may be temporarily confined pending the outcome of his commitment trial under § 14 (*a*), he must be a convicted sexual offender, serving a prison sentence at the time the Commonwealth petitions for his commitment, whose sentence is scheduled to expire before that final outcome is obtained. A judge must also have concluded, after a probable cause hearing (including expert testimony, see *Commonwealth* v. *Bruno, supra* at 513), with significant procedural protections provided to the respondent, that there is sufficient admissible evidence on each element of proof necessary to satisfy a jury that the person is sexually dangerous beyond a reasonable doubt, see *Commonwealth* v. *Reese,* 438 Mass. 519, 524 (2003). In addition, the Commonwealth must have petitioned for trial after the respondent has been evaluated by at least two qualified examiners at the treatment center. Finally, the statute requires that,

absent merited delay, the trial must be held within sixty days.[11,12]

In these circumstances, we conclude that the confinement of such a person is narrowly tailored to the Legislature's expressed interest in protecting the public from harm by persons convicted of sexual offenses who are likely to be sexually dangerous. Cf. *Paquette* v. *Commonwealth*, 440 Mass. 121, 131 (2003), cert. denied, 540 U.S. 1150 (2004) (holding bail revocation following charge of crime committed while on release to be "narrowly tailored to further the Commonwealth's legitimate and compelling interests in assuring compliance with its laws[] and in preserving the integrity of the judicial process"); *Querubin* v. *Commonwealth*, 440 Mass. 108, 116 (2003) (holding denial of bail to defendant posing flight risk to be "narrowly tailored to the State's legitimate and compelling interest in assuring the defendant's presence at trial").

We proceed to determine whether such confinement is implemented in a fair manner under the statute and therefore satisfies the requirements of procedural due process. We hold that it does.

Where, as here, the government interferes with an individual's protected liberty interest, we must balance the interest of the individual affected, the risk of erroneous deprivation of that interest, and the government's interest in the efficient administration of its affairs. *Paquette* v. *Commonwealth*, *supra* at 131. See *Mathews* v. *Eldridge*, 424 U.S. 319, 334-335 (1976); *Aime* v. *Commonwealth*, 414 Mass. 667, 675 (1993). As we have recognized, "[t]he requirements of procedural due process are pragmatic and flexible, not rigid or hypertechnical. . . . '[D]ue process is flexible and calls for such procedural protections as

---

[11]If the relevant agencies and the Commonwealth act promptly, as they should, commitment proceedings may even conclude before the date on which a person is scheduled to be released from custody. See *Commonwealth* v. *Gagnon*, 439 Mass. 826, 832 n.8 (2003); *Commonwealth* v. *Bruno*, 432 Mass. 489, 508 (2000).

[12]Over two years have passed since the judge found probable cause that Knapp is a sexually dangerous person, but Knapp's trial has yet to occur. Knapp does not argue that this delay has not been "for good cause" or in the "interests of justice," and indeed the judge noted that trial has been delayed "[m]ostly at the request of the [respondent] . . . ."

the particular situation demands.' " *Roe* v. *Attorney Gen.*, 434 Mass. 418, 427 (2001), quoting *Morrissey* v. *Brewer*, 408 U.S. 471, 481 (1972).

Citing *United States* v. *Salerno*, 481 U.S. 739 (1987), and *Aime* v. *Commonwealth, supra*, Knapp argues that a determination of "probable cause" using the "directed verdict" standard required by *Commonwealth* v. *Reese*, 438 Mass. 519, 522 (2003), is constitutionally inadequate to justify his confinement pending final judgment, and that the Commonwealth must instead prove by "clear and convincing" evidence that there are no conditions of release that may reasonably assure the safety of the public.[13] *United States* v. *Salerno, supra*, and *Aime* v. *Commonwealth, supra*, do not require such a standard in this circumstance.[14] Accord *Cooley* v. *Superior Court*, 29 Cal. 4th 228, 252 (2002) (approving confinement of person until commitment trial once judge determines at probable cause hearing that *"reasonable person could entertain a strong suspicion"* that person is sexually violent [emphasis in original]).

In *United States* v. *Salerno, supra*, the United States Supreme Court held that a judge may deny bail "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community." *Id.* at 751. In *Aime* v. *Commonwealth, supra* at 675, 682, we struck down a Massachusetts statute that permit-

---

[13]Knapp's characterization of the probable cause standard suggests that it is lower than we have established it to be. In *Commonwealth* v. *Reese*, 438 Mass. 519 (2003), we stated that "the decision-making process [at a § 12 (*c*) probable cause hearing] ought to consist of a two-part inquiry, one quantitative and the other qualitative. 'The judge must be satisfied, first, that the Commonwealth's admissible evidence, if believed, satisfie[s] all of the elements of proof necessary to prove the Commonwealth's case. Second, she must be satisfied that the evidence on each of the elements is not so incredible, insubstantial, or otherwise of such a quality that no reasonable person could rely on it to conclude that the Commonwealth had met its burden of proof.' " *Id.* at 524, quoting *Commonwealth* v. *Blanchette*, 54 Mass. App. Ct. 165, 175 (2002).

[14]*Addington* v. *Texas*, 441 U.S. 418 (1979), which established the clear and convincing evidentiary standard as the one appropriate for civil commitment, addressed ultimate commitment determinations, not limited periods of confinement pending final judgment. On this measure, G. L. c. 123A, § 14 (*d*), permitting final commitment only on a finding beyond a reasonable doubt, exceeds the Federal constitutional minimum.

ted "judicial officer[s] to set bail in an amount so that an arrestee perceived to be dangerous will not be able to gain his or her liberty pending trial" as an unconstitutional "scattershot attempt" at incapacitation.[15] These cases, reviewing the constitutionality of statutes permitting the denial of bail on general grounds of dangerousness in criminal prosecutions, are inapposite to our consideration here of a statute providing for the confinement of a person awaiting a civil commitment trial, after sufficient evidence has been found to exist for a determination of sexual dangerousness.

Unlike the holding of suspects denied bail, confinement of alleged sexually dangerous persons after their release from prison and pending a commitment trial under G. L. c. 123A is civil, not criminal, in nature. See *Kansas* v. *Hendricks,* 521 U.S. 346, 361-363 (1997) (proceedings under statute that, like G. L. c. 123A, required secure confinement after judge found probable cause to believe that person was sexually violent predator are civil, not criminal). Those confined are held in the treatment center (a secure mental health facility), not a correctional facility. See G. L. c. 123A, §§ 13 (*a*), 14 (*a*); *Doe* v. *Gaughan,* 808 F.2d 871, 879 (1st Cir. 1986) (distinguishing between confinement in jail and in treatment facility). And confinement may continue only for a relatively short period of time. See G. L. c. 123A, § 14 (*a*). See also *Mendonza* v. *Commonwealth,* 423 Mass. 771, 783 & n.5 (1996) (noting constitutional significance of term of confinement); *Logan* v. *Arafeh,* 346 F. Supp. 1265, 1268 (D. Conn. 1972), aff'd sub nom. *Briggs* v. *Arafeh,* 411 U.S. 911 (1973) (holding forty-five day commitment to hospital for mental illness on physician's finding of dangerousness not to violate due process because of availability of judicial review after forty-five days).

Further, the combination of an adversary probable cause hearing (including expert testimony), the standard for finding prob-

[15]In *Aime* v. *Commonwealth,* 414 Mass. 667 (1993), we noted the clear and convincing standard of *United States* v. *Salerno,* 481 U.S. 739 (1987), but did not describe what would be the appropriate burden of proof under an otherwise constitutional statute. *Id.* at 679, 682. We have since held the clear and convincing standard to be the appropriate measure of an arrestee's dangerousness for a judge to deny bail in a criminal case. See *Mendonza* v. *Commonwealth,* 423 Mass. 771, 782-784 (1996).

able cause (see note 13, *supra*), and the follow-on examination by at least two qualified examiners, see G. L. c. 123A, § 13, creates a constitutionally adequate mechanism for eliminating the danger of erroneous confinement beyond a period justified by the demonstrated risk. The confinement required by § 14 (*a*) occurs in a setting that respects the balance that procedural due process requires.

Therefore, in response to the question reported to us by the single justice, we hold that G. L. c. 123A, § 14 (*a*), does not permit a judge to release a respondent pending trial, on probationary conditions, after a finding of probable cause on the Commonwealth's petition for his commitment as a sexually dangerous person.[16] The case is remanded to the single justice for proceedings consistent with this opinion.

*So ordered.*

---

[16]Our answer to the question posed in the reservation and report is the same with regard to G. L. c. 123A, § 13 (*a*), although the circumstances which would raise the question under § 13 (*a*) are not present in this case. See notes 5 and 10, *supra*.