Curran, Dennis J., J.
The Commonwealth has filed a petition for the commitment of Gordon Flood as a sexually dangerous person. This case was tried twice previously before a jury, both of which ended in mis *641 trials after the juries deadlocked. Mr. Flood now moves to dismiss the petition and also moves to modify the terms of confinement. For the following reasons, Mr. Flood’s motion to dismiss and motion to modify the terms of confinement must be DENIED.
FACTUAL BACKGROUND
On October 29, 1993, Mr. Flood was convicted of three counts of rape of a child, three counts of kidnapping, two counts of assault and battexy, one count of mayhem, one count of assault and battery with a dangerous weapon, and one count of threats. Mr. Flood was sentenced to concurrent terms of fifteen to twenty years on the rape counts, and concurrent terms of five to ten years on the kidnapping and mayhem counts. (Docket SUCR1992-11844.)[1]
Just three weeks before Mr. Flood was to be released from his prison commitments, on December 24, 2010, the Commonwealth filed a petition under G.L.c. 123A, §12, seeking to have him committed as a sexually dangerous person. On January 5, 2011, the court (Giles, J.) ordered that Mr. Flood be temporarily committed to the Massachusetts Treatment Center in Bridgewater under G.L.c. 123A, § 12(e), pending a determination of probable cause to believe he was a sexually dangerous person. Mr. Flood waived the probable cause hearing and stipulated that probable cause existed. On February 8, 2011, the court (Giles, J.) issued an order finding that there was probable cause to believe Mr. Flood was a sexually dangerous person based on that stipulation. Two qualified examiners, Drs. Michael Henry and Barbara Quinones, examined Mr. Flood at the Massachusetts Treatment Center and both concluded that he was a sexually dangerous person.
On March 21, 2011, the Commonwealth filed a petition for trial under G.L.c. 123A, §14(a). The case went to trial on April 8, 2013, and ended in a mistrial on April 17, 2013, because the jury was unable to reach a verdict. The case was retried on March 6, 2014, and ended in a mistrial on March 20, 2014, when the jury was again unable to reach a verdict.
The case is currently scheduled to begin trial on June 8, 2015.
DISCUSSION
I. Motion to Dismiss
Mr. Flood’s counsel has submitted a compelling and articulate appeal as to why he ought to be released. He argues that the language of G.L.c. 123A, § 14(d) requires a verdict, and if no verdict is rendered, the petition must be dismissed and the individual must be released from custody. General Laws c. 123A restricts the liberty and general rights of individuals and is narrowly construed. Commonwealth v. Gillis, 448 Mass. 354, 357 (2007); see also Commonwealth v. Knapp, 441 Mass. 157, 159 (2004) (“General Laws c. 123A sets forth strict procedures that courts and the Commonwealth must follow with regard to the civil commitment of sexually dangerous persons”). Section 14(d) provides that: “If after the trial, a jury finds unanimously and beyond a reasonable doubt that the person named in the petition is a sexually dangerous person, such person shall be committed to the treatment center.. .’’He contends that because the statute is silent on the issue of a deadlocked jury, the only possible conclusion is that a verdict is required. He poignantly argues that G.L.c. 123A, §9 specifically provides that normal civil practice procedures apply, while §14 contains no such provisions.[2] He contends that the Massachusetts legislature’s failure to make a similar provision in §14 means that the normal practice of declaring a mistrial for a deadlocked juiy is inapplicable.
Further, Mr. Flood’s counsel admits — quite candidly — that his argument that if the jury deadlocks, then the case must be dismissed, is without precedent. Criminal juries are required to return unanimous verdicts, Mass.R.Crim.P. 27(a), while civil juries are required to have the agreement of five-sixths of its members, G.L.c. 234, §34A. In either case, a failure of a proper number of jurors to agree does not amount to a failure to meet the burden of proof. As unusual as this proposition sounds, it is a matter of law. See Arizona v. Washington, 434 U.S. 497, 509 (1978) (“The argument that a jury’s inability to agree establishes reasonable doubt as to the defendant’s guilt, and therefore requires acquittal, has been uniformly rejected in this country”). “The trial judge’s belief that a jury is unable to reach a verdict ‘has long been considered the ’’classic basis" for a proper mistrial.’ “ Ray v. Commonwealth, 463 Mass. 1, 3 (2012), quoting Blueford v. Arkansas, 132 S.Ct. 2044, 2047 (2012). The Appeals Court has held that in a trial under G.L.c. 123A, §14, ”[t]he decision whether to declare a mistrial is within the discretion of the judge." Commonwealth v. Mazzarino, 81 Mass.App.Ct. 358, 364 (2012) (affirming trial judge’s denial of motion for mistrial based on improper statements by witness), quoting Commonwealth v. Bryant, 447 Mass. 494, 503 (2006). The juiy’s failure to reach a unanimous verdict that Mr. Flood is a sexually dangerous person as required under the statute is not equivalent to a verdict that he is not a sexually dangerous person. Nothing in the statutory language or the case law compels a court to direct a verdict or dismiss a petition if the jury does not reach a verdict.
Mr. Flood argues that due process requires that the petition be dismissed. “While G.L.c. 123A proceedings are technically classified as civil proceedings, the potential deprivation of liberty mandates that due process protections apply.” Sheridan, petitioner, 422 Mass. 776, 777-78 (1996), quoting Commonwealth v. Travis, 372 Mass. 238, 250 (1977). “If the government’s action impairs a fundamental right, that action must be ‘narrowly tailored to further a legitimate and compelling governmental interest’ in order *642 to survive substantive due process review.” Knapp, 441 Mass. at 164, quoting Aime v. Commonwealth, 414 Mass. 667, 672 (1993). Because of the nature of the rights involved, “(c]ertain rights ordinarily afforded criminal defendants have been extended to those civilly charged with being sexually dangerous persons, e.g., the right to counsel, the right to have counsel appointed if the defendant is indigent, the right to call expert witnesses (and, if indigent, the right to have the Commonwealth pay for them), the right to have process issue to secure the attendance of witnesses, the right to a unanimous juiy verdict, the right that the case be proven beyond a reasonable doubt.” Commonwealth v. Dresser, 71 Mass.App.Ct 454, 458 (2008). Permitting retrial after a mistrial does nothing to harm Mr. Flood’s due process rights; the same protections that applied during his previous trials will continue to apply at the retrial.
Neither G.L.c. 123A, §14 nor due process requires the dismissal of the petition because the jury was unable to reach a unanimous verdict. Therefore, despite counsel for Mr. Flood’s counsel's eloquent advocacy (both oral and written), his motion to dismiss must be denied.
II. Terms of Confinement
Mr. Flood also seeks to modify the terms of his confinement and asks that the court move him from the Massachusetts Treatment Center to the Boston Pre-Release Center, a minimum security and pre-re-lease correctional facility.
Section 12(c) requires that the court hold a hearing to determine if there is probable cause to believe the individual is a sexually dangerous person. Upon a finding that probable cause exists, the individual shall be committed to the treatment center for a period not exceeding sixty days for the purpose of examination and diagnosis by two qualified examiners. G.L.c. 123A, § 13(a). The district attorney may petition the court for a trial, and “[t]he person named in the petition shall be confined to a secure facility for the duration of the trial.” G.L.c. 123A, §14(a). “After a finding of probable cause, however, §§13 and 14 of the statute operate to deprive the judge of discretion with respect to whether the person will be committed. At this point, ‘the prisoner . . . shall be committed to the treatment center ... for the purpose of examination.’ If, after examination, the Commonwealth petitions for a trial, ‘the court shall notify the person . . . that a trial by jury will be held within [sixty] days,’ and ‘the person . . . shall be confined to a secure facility for the duration of the trial.’ ” Knapp, 441 Mass. at 161-62 (emphasis and alterations in original; internal citations omitted). Although confinement interferes with an individual’s protected liberty interest, it is narrowly tailored to meet the legislature’s interest in protecting the public, and does not violate the requirements of substantive or procedural due process. Id. at 166-67.
In this case, Mr. Flood waived his right to a hearing under G.L.c. 123A, §12(c), and stipulated to a finding of probable cause that he was a sexually dangerous person. Drs. Heniy and Quinones examined him under G.L.c. 123A, §13(a), and each determined that he was a sexually dangerous person. Once the Commonwealth petitioned for a trial, the statute requires that Mr. Flood be held in a secure facility until the trial is over. See G.L.c. 123A, §14(a). Therefore, this court lacks the authority to modify Mr. Flood’s terms of confinement. See Knapp, 441 Mass. at 161-63 (noting that confinement requirement under § 14(a) applies to period between probable cause finding and trial). Accordingly, Mr. Flood’s motion to modify the terms of confinement must be denied.
ORDER
For these reasons, Mr. Flood’s motion to dismiss the petition and motion to modify the terms of his confinement are DENIED.

 Mr. Flood completed his criminal sentence on January 14, 2011.

 The rules of civil procedure do not apply to “proceedings pertaining to the adjudication, commitment and release of sexually dangerous persons.” Mass.R.Civ.P. 81(a)(l)(8).