SUPERIOR COURT 
 
 COMMONWEALTH vs. RICHARD MEUSE

 
 Docket:
 2077CV00392
 
 
 Dates:
 April 30, 2020
 
 
 Present:
 /s/Jeffrey T. Karp Associate Justice, Superior Court
 
 
 County:
 ESSEX, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER OF TEMPORARY COMMITMENT PURSUANT TO G.L. c. 123, § 12(e) 
 
 

 The Commonwealth has filed a petition under G.L. c. 123A, § 12(b), alleging that the respondent, Richard Meuse ("Meuse" or "Respondent"), is a "sexually dangerous person," as defined in G.L. c. 123A, § 1 ("SDP").
 On April 29, 2020, the Court conducted a hearing on Commonwealth's Motion For Temporary Commitment Pending Determination Of Probable Cause (Paper No. 4) ("Motion") in which the Commonwealth seeks the temporary commitment of Meuse to the Massachusetts Treatment Center ("MTC") pursuant to G.L. c. 123A, § 12(e). Meuse opposes temporary commitment primarily on grounds related to the Covid-19 pandemic and requests that the Court release him on conditions, such as home confinement.
 After thorough review of the evidence presented at the hearing, the Court finds the Commonwealth has made a "sufficient showing" under section 12(e) to believe that Meuse is an SDP. The Court further finds that, notwithstanding the unprecedented health emergency resulting from the pandemic, Meuse shall be temporarily committed to the MTC pursuant to G.L. c. 123A, § 12(e), for no more than ten business days until commencement of a probable cause hearing under G.L. c. 123A, § 12(c).
 Page 1 of 15
BACKGROUND 
 At the hearing, the Commonwealth presented 26 exhibits, including a Sexual Dangerousness Evaluation Report prepared by Robert H. Joss, Ph.D. ("Dr. Joss"). Meuse presented seven exhibits, including two affidavits of medical professionals; an undated advisory from the American Diabetes Association; and, an Order in Worcester Superior Court No. 8585CR1810 dated April 14, 2020, releasing an SDP detainee on conditions.
 The following evidence is taken from the exhibits.
 A. Meuse's Medical And Mental Health History 
 Meuse was born on July 14, 1965, and is 54 years-old. He suffers from diabetes, high blood pressure, and high cholesterol.[1]
 Meuse also suffers from longstanding mental health concerns and carries diagnoses of Borderline Personality Disorder and Antisocial Personality Disorder. He has had numerous hospitalizations at Bridgewater State Hospital and Lemuel Shattuck Hospital for suicidal ideation, suicide attempts and acts of self-harm.
 B. Meuse's Criminal History 
 Meuse has an extensive criminal record that goes back to 1983. He has convictions in Vermont, New Hampshire, and Massachusetts. An overview of Meuse's criminal history follows.
 In 1984, Vermont authorities charged Meuse with two counts of lewd and lascivious conduct with a child. In April 1985, he was convicted of both counts. The
---------------------------
[1]Meuse has thus far been unable to obtain his medical records. However, the Commonwealth concedes that Meuse suffers from these medical conditions, but the severity of the conditions is currently unknown to Meuse's counsel.
 Page 2 of 15
Vermont court sentenced Meuse to a suspended prison sentence and placed on probation for six months. In September 1985 (i.e., only five months after being placed on probation), Meuse was found to be in violation of the probation conditions and was incarcerated for seven months.
 In July 1991, a 13 year-old girl reported Meuse raped her. In October 1991, another 13 year-old girl reported that Meuse repeatedly raped her. In late 1991, Meuse was indicted for both sets of child rape allegations in Essex Superior Court Nos. CR019958 and CR019959 ("1991 Case").
 On January 17, 1992, Meuse was convicted in the 1991 Case of three counts of rape of a child in violation of G.L. c. 265, § 23, and sentenced to a split state prison sentence of five years to seven years with two years to serve.[2]
 On October 29, 1993, the court found Meuse in violation of probation in the 1991 Case and committed him to prison to serve the remainder of the split sentence.
 In December 1998, Meuse was indicted in Essex Superior Court No. 9877CR02639 for two counts of rape of a child, subsequent offense, in violation of G.L. c. 265, § 23; failure to register as a sex offender in violation of G.L. c. 6, § 178H; and, two counts of contributing to the delinquency of a minor in violation of G.L. c. 119, § 63 ("1998 Case").
---------------------------
[2] It appears that Meuse was convicted of the charges involving the victim of the October 1991 allegations (Case No. CR019959), and that the indictment involving the July 1991 victim was placed on file (Case No. CR019958).
 Page 3 of 15
 On February 6, 2001, a jury in the 1998 Case found Meuse not guilty of the two counts of rape of a child and guilty of the two counts of contributing to the delinquency of a minor. The court sentenced Meuse to the house of correction.[3]
 In 2002, Meuse was indicted in Essex Superior Court No. 0277CR00354 and charged with ten counts of rape of a child, subsequent offense, in violation of G.L. c. 265, § 23 ("2002 Case"). The Commonwealth alleged Meuse repeatedly raped a 15 year-old girl over two months during 2001 - 2002.
 On October 7, 2003, a jury found Meuse guilty in the 2002 Case of all ten counts of rape of a child, subsequent offense. The court sentenced Meuse to fifteen years to twenty years in state prison, and ten years of probation to run after his release from prison. Meuse is presently serving this state prison sentence (and is due to be released on May 1, 2020).
 In July 2017, the Department of Correction charged Meuse with assault and battery with a bodily substance on a correctional officer. That charge is pending in Wrentham District Court.
 C. Disciplinary History 
 During Meuse's state prison incarceration for the 1991 Case, he was the subject of more than 30 disciplinary reports for, inter alia, possession of child and adult pornography, lewdness and indecent exposure toward female corrections officers, masturbation in the presence of female corrections officers, and placing his feces in plumbing pipes.
---------------------------
[3] The Commonwealth did not submit evidence regarding the incident(s) at issue in the 1998 Case.
 Page 4 of 15
 While being held prior to trial in the 2002 Case, Meuse was the subject of three disciplinary reports for, inter alia, possession of pornography and fighting with an inmate.
 During Meuse's most recent state prison incarceration (i.e., from October 2003, through the present), he has been the subject of more than 60 disciplinary reports for, inter alia, possession of weapons and contraband, misuse of prescription medication, fighting, masturbating in front of a female corrections officer, assaulting staff members, and possession of pornography.
 D. Procedural History 
 As stated, Meuse will be released from state prison on May 1, 2020, after completing the sentence in the 2002 Case. He will be on probation for ten years and, as special conditions of probation, Meuse is required to register as a sex offender, participate in sex offender treatment, and stay away from children under 16 years-old.
 On April 27, 2020, the Commonwealth filed the petition in this matter for commitment of Meuse as an SDP.
ANALYSIS
 I. STATUTORY FRAMEWORK 
 "Finding 'the danger of recidivism posed by sex offenders. . . to be grave and that the protection of the public from these sex offenders is of paramount interest to the government,' the Legislature in 1999 enacted a mechanism, codified at G. L. c. 123A, to provide for the civil commitment of individuals convicted of sexual offenses who are found to be sexually dangerous persons." Commonwealth v. Knapp, 441 Mass. 157, 159 (2004). The Legislature proclaimed that the purpose of the law "is to protect
 Page 5 of 15
forthwith the vulnerable members of our communities." Id. In fact, "[t]he language that the Legislature has employed and the procedures that it has set forth [in Chapter 123A] demonstrate its clear 'concern with protecting the public from harm by persons ... who are likely to be sexually dangerous." Id. at 160 (citation omitted). Nevertheless, "[t]he statute's strict timetables and express recitations of respondents' rights throughout the process also demonstrate the Legislature's simultaneous concern for individuals' liberty." Id.
 If a person named as a respondent in an SDP action, like Meuse, is scheduled to be released from custody before a probable cause hearing may be conducted and completed under G.L. c. 123A, § 12(c), he may be temporarily committed to the MTC pursuant to G.L. c. 123A, § 12(e). Under section 12(e), "[a] person is not temporarily committed. . . simply on the filing of a petition. Rather, the Commonwealth must make a 'sufficient showing' based on 'evidence before the court,' that the person named in the petition is sexually dangerous .. . and that the person is likely to commit future harm." Commonwealth v. Bruno, 432 Mass. 489, 503 — 504 (2000) (internal and external citations omitted).[4]
 The "sufficient showing" mandated by section 12(e) requires the Commonwealth to present evidence sufficient to establish probable cause to arrest. Id. at 510. "Probable cause to arrest exists when, at the moment of arrest, the facts and circumstances known to the police officers were sufficient to warrant a person of reasonable caution in believing that the defendant had committed or was committing a crime." Id. (citations omitted).
---------------------------
[4] "A person temporarily committed [under section 12(e)] is committed to [the MTC]. . . . He does not remain incarcerated." Id. at 504 (internal citation omitted).
 Page 6 of 15
 As the SJC has observed:
Analogizing to this standard, probable cause to commit a person temporarily under G. L. c. 123A, § 12 (e), exists when the evidence presented, assuming it is true, is sufficient to warrant a judge in believing that the person is a sexually dangerous person. The evidence must meet this standard as to each element of proof, which includes proof that the person currently 'suffers from a mental abnormality or personality disorder which makes such person likely to engage in sexual offenses.' G. L. c. 123A, § 1.
Id. at 510 — 511 (citations omitted).
 Therefore, here, the Court must determine if there is probable cause to believe Meuse is a "sexually dangerous person," which requires evidence that: (1) Meuse has been convicted of a "sexual offense"; and, (2) he suffers from a "mental abnormality" or "personality disorder" (3) that makes him "likely to engage in sexual offenses if not confined in a secure facility." G.L. c. 123A, § 1; see also Commonwealth v. Cowen, 452 Mass. 757, 761 (2008) (affirming judgment finding defendant a sexually dangerous person where "[t]he judge concluded beyond a reasonable doubt that the defendant (1) had been convicted of a sexual offense; (2) suffered from a mental abnormality (pedophilia) and a personality disorder (antisocial traits); as a result of which (3) the defendant was likely to engage in sexual offenses if not confined to a secure facility.").
 Page 7 of 15
 
II. A SUFFICIENT SHOWING (PROBABLE CAUSE) HAS BEEN MADE TO BELIEVE THAT THE RESPONDENT IS A SEXUALLY DANGEROUS PERSON 
 Here, applying the above framework, the Court concludes that the Commonwealth's evidence satisfies all three of the elements necessary to find probable cause exists to believe that Meuse is an SDP.
 1. The Respondent Has Been Convicted Of A "Sexual Offense"
 There is no dispute that Meuse has been convicted of a qualifying "[s]exual offense," as defined by G. L. c. 123A, § 1; namely, ten counts of rape of a child, subsequent offense, in violation of G.L. c. 265, § 23, in the 2002 Case.
 
2. The Respondent Suffers From A "Personality Disorder" Which Makes Him Likely To Engage In "Sexual Offenses" If Not Confined In A Secure Facility 
 "Whether a person suffers from a mental abnormality or personality [disorder], as well as the predictive behavioral question of the likelihood that a person suffering from such a condition will commit a sexual offense, are matters beyond the range of ordinary experience and require expert testimony." Bruno 432 Mass. at 511, 513 (2000); see also Commonwealth v. Dube, 59 Mass. App. Ct. 476, 481 - 482 (2003) (same).
 The SDP law defines "personality disorder" as "a congenital or acquired physical or mental condition that results in a general lack of power to control sexual impulses." G.L. c. 123A, § 1. Here, Dr. Joss concluded, based on his review of pertinent records, Meuse likely suffers from a personality disorder known as "Other Specified Personality Disorder with mixed Borderline and Antisocial features."[5] This personality disorder is
---------------------------
[5] Dr. Joss did not interview Meuse. Rather, he relied on review of voluminous records.
 Page 8 of 15
recognized as such in the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5").
 Dr. Joss further determined that, for Meuse, this diagnosis "rises to the level of a general lack of power to control sexual impulses," as evidenced by Meuse's failure to conform his conduct to the law in 2002 after having been imprisoned for sexually assaulting a 13 year-old girl in 1991. Dr. Joss further observed that Meuse's lack of impulse control is likewise evidenced by the dozens of disciplinary infractions he received while incarcerated, including the multiple instances of possession of child and adult pornography, and lewd conduct and masturbation in front of female correctional officers.
 Dr. Joss also applied the Static-99R and determined that Meuse's risk to reoffend within five years is between 15.2 percent and 20.5 percent.[6] He ultimately opined that, because of the personality disorder, Meuse is likely to engage in future sexual offenses if not confined to a secure facility.
 After thorough review of the Exhibits, the Court fully credits Dr. Joss's conclusions that Meuse suffers from a mental condition that causes a general lack of power to control his sexual impulses, i.e., a personality disorder. The record amply reflects probable cause to believe that Meuse repeatedly and impulsively engaged in sexually aberrant behavior involving children and adults. At age 26, 33, and 36, Meuse engaged in sexual offenses with underage girls notwithstanding the fact of his previous
---------------------------
[6] "The Static-99R is an actuarial tool, designed to predict the recidivism risk of sexual offenses in adult male sex offenders who have been convicted of at least one sexual offense. . . . Initially developed in 1999, the Static-99 has since been revised and renamed 'Static-99R." Commonwealth v. George, 477 Mass. 331, 335 n.2 (2017) (internal citation omitted).
 Page 9 of 15
incarceration for the same behavior. Furthermore, Meuse engaged in sexually deviant conduct while incarcerated, as recently as March 2013, while 48 years-old.
 In sum, the Court finds the Commonwealth has made a sufficient showing to believe that Meuse is an SDP and should be temporarily committed to the MTC pursuant to G.L. c. 123A, § 12(e).
 
III. INCARCERATION OF THE RESPONDENT AT THE MTC UNDER PRESENT CIRCUMSTANCES CAUSED BY THE COVID-19 PANDEMIC WILL NOT VIOLATE HIS DUE PROCESS RIGHTS AND IS NECESSARY TO ENSURE THE SAFETY OF CHILDREN 
 Although section 12(e) grants the Court the authority to temporarily commit Meuse to the MTC, it does not require such a result. See G.L. c. 123A, § 12(e) ("the court, upon a sufficient showing based on the evidence before the court at that time, may temporarily commit such person to the treatment center pending disposition of the petition.") (emphasis added). Thus, the question remains whether Meuse should be committed or released on conditions while awaiting further proceedings in this matter.
 Invoking the impact of the Covid-19 pandemic, Meuse objects to temporary commitment because, he asserts, his incarceration at the MTC will violate his right to substantive due process and deprive him of his right to procedural due process. Meuse further argues that, if the Court finds the Commonwealth has met its burden for temporary commitment under section 12, the Court should exercise its discretion to release him with conditions and allow him to begin serving his probationary sentence. The Commonwealth objects to Meuse's release on conditions.
 Page 10 of 15
 1. Impact Of Covid-19 Pandemic 
 On March 10, 2020, "the Governor declared a state of emergency to support the Commonwealth's response to the threat of COVID-19. On March 11, 2020, the World Health Organization formally declared the expanding spread of the COVID-19 virus a global pandemic." Committee for Public Counsel Services v. Chief Justice of the Trial Court, 484 Mass. 431, 433 — 434 (2020) ("CPCS"). The SJC has recognized that the pandemic has created an urgent and unprecedented threat to the health of incarcerated persons requiring a reduction in the number of persons held in custody. Id. at 445. In fact, there is no question that "correctional institutions face unique difficulties in keeping their populations safe during this pandemic" due to their confined environments and high population of persons suffering from chronic diseases. Id. at 436 — 437.
 According to data compiled by the special master appointed in CPCS, as of April 27, 2020, 45 of the 543 inmates (i.e., 8% of inmates) at the MTC have tested positive for the coronavirus.[7] Furthermore, people with diabetes and high blood pressure, such as Meuse, are more likely to experience severe symptoms and complications from Covid-19, and confinement in a correctional facility is likely to exacerbate the symptoms and complications.
---------------------------
[7]A local news report posted on April 28, 2020, observed that more than 40 inmates at the MTC have been diagnosed with Covid-19, and five prisoners have died. (https://www.wbur.org/commonhealth/2020/04/28/massachusetts-prisoner-coronavirus-deaths) (last accessed April 29, 2020).
 Page 11 of 15
 2. The Governmental Interest In The Civil Commitment Of SDPs 
 In evaluating Meuse's due process claims, the Court must be mindful of the aforementioned governmental interest in the SDP law. The Legislature enacted the SDP law "'to protect forthwith the vulnerable members of our communities" from recidivism by sexual offenders. Knapp, 441 Mass. at 159.
 3. The Respondent's Temporary Commitment To MTC Does Not Violate His Right To Substantive Due Process 
Meuse first argues that even a temporary commitment to the MTC under the current circumstances "shocks the conscience" and violates his right to substantive due process. The Court disagrees.
 In Bruno, the SJC rejected the respondent's claim that the temporary commitment of SDPs under section 12(e) violates a respondent's right to substantive due process given that it "permits temporary commitment only in narrowly circumscribed circumstances." Bruno, 432 Mass. at 504. Here, notwithstanding the exceptional circumstances presented by the Covid-19 pandemic, "[p]rotecting children from exposure to [sexual] conduct by persons suffering from a mental disorder who, as a consequence, are likely to engage in the conduct falls well within constitutional boundaries." Commonwealth v. Fay, 467 Mass. 574, 586 (2014).
 Page 12 of 15
 
4. The Respondent's Temporary Commitment To MTC Does Not Violate His Right To Procedural Due Process 
 Meuse next argues that committing him to the MTC will deprive him of the right to procedural due process and the right to counsel in these proceedings because, in response to the pandemic, the MTC has suspended attorney visits, locked inmates in their cells, and hindered inmate's ability to make telephone calls.
 The Court recognizes that in-person contact between Meuse, his counsel, and his expert witnesses is needed to prepare his defense in these proceedings, and that contact via telephone, rather than in-person, is less than ideal. However, on the record before it, the Court does not find that the current restrictions violate due process, at least on a short-term basis.[8] At bottom, the SDP law "provides ample procedural protections to those subjected to potential commitment, and therefore, does not violate [Meuse's] procedural due process rights." Bruno, 432 Mass. at 504.
 5. The Respondent Is Not A Candidate For Release on Conditions 
 Based on the record before it, the Court is convinced beyond any doubt that, even in these exceptional times where approximately 8% of inmates at the MTC have tested positive for the coronavirus, the temporary confinement of Meuse while awaiting further proceedings in this matter is necessary to protect children and the public.
---------------------------
[8] Meuse "may move the court for relief from . . . temporary commitment at any time prior to the probable cause determination." Bruno, 432 Mass. at 504 (2000) (original emphasis) (quoting G.L. c. 123A, § 12(e)). See, e.g., Commonwealth v. Dinquis, 74 Mass. App. Ct. 901, 902 (2009) (under § 12(e), remedy for alleged violation of timing requirements of §12(a) is to move for release from custody, not dismissal of the SDP petition) (citing Kenney, petitioner, 66 Mass. App. Ct. 709, 712 (2006) ("Section 12(e) of the statute does not contemplate dismissal of the petition as a remedy for delay."). Therefore, nothing prevents Meuse from seeking release from temporary commitment under section 12(e) if, over time, he is able to demonstrate significant interference with his ability to prepare his defense.
 Page 13 of 15
 Home confinement and GPS monitoring of Meuse will not ensure the safety of children and the public. Meuse has a long, persistent, and significant history of failing to obey court (probation) and institutionally imposed rules and conditions. He suffers from a mental disorder that makes him especially impulsive to perpetrate sexually deviant behavior. Given these facts, Meuse is not a candidate for release on conditions.
CONCLUSION 
 Based on the above, the Court finds that the Commonwealth has made a sufficient showing under G.L. c. 123A, § 12(e), to believe that Meuse is a sexually dangerous person, as defined in G.L. c. 123A, § 1. The Court further concludes that the risk of danger to children and the public if Meuse not subject to temporary confinement outweighs the risk of Covid-19 to Meuse. Therefore, Meuse shall be temporarily committed to the MTC pursuant to G.L. c. 123A, § 12(e).
 Page 14 of 15
ORDER
 For the above reasons, it is HEREBY ORDERED that:
 1. Commonwealth's Motion For Temporary Commitment Pending Determination Of Probable Cause (Paper No. 4) is ALLOWED.
 2. After a hearing, the Court rules that the Commonwealth has made a sufficient showing to believe that the Respondent Richard Meuse is a sexually dangerous person, as defined at G.L. c. 123, § 1, and that he should be temporarily committed to the Massachusetts Treatment Center pursuant to G.L. c. 123A, § 12(e).
 3. Respondent Richard Meuse is hereby committed to the Massachusetts Treatment Center while awaiting completion of the probable cause hearing contemplated by G.L. c. 123A, § 12(c).
 4. Notwithstanding No. 3 hereof, the Court requests that the Department of Correction continue to house Respondent Richard Meuse at MCI-Gardner while awaiting further proceedings in this matter.[9]
 5. The undersigned judge will retain jurisdiction over this matter until completion of the probable cause hearing.
 6. This matter is continued to May 14, 2020, at 10:00 a.m. for a probable cause hearing.[10]
@/s/Jeffrey T. Karp Associate Justice, Superior Court
@April 30, 2020
---------------------------
[9] The Court understands that, due to the Covid-19 pandemic, the Department of Correction is currently amenable to housing SDP pretrial detainees in facilities other than the MTC. Thus, with that understanding the Court makes such a request for the Respondent.
[10] The SJC has ruled "that absent unusual circumstances, a probable cause hearing should commence no later than ten business days after a temporary commitment order is made under § 12 (e)." Bruno, 432 Mass. at 513. This Court does not reach the issue of whether the Covid-19 pandemic is "unusual circumstances" warranting commencement of the probable cause hearing beyond ten business days. Moreover, as Meuse's counsel acknowledged at the hearing, he is free to waive the 10 business-day limit of temporary commitment while awaiting completion of the probable cause hearing (and counsel often does).
 Page 15 of 15
xxz